JS 44 (Rev. 04/21)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Barbara Tammaro, as Administratrix of the Estate of Julianne Marie Kehler, deceased

**(b)** County of Residence of First Listed Plaintiff    Chester
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Ian T. Norris, Esquire - ID#207566 - Reddick Moss, PLLC
1500 JFK Blvd., Ste 1930, Phila., PA 19102

## DEFENDANTS

County of Chest, Pocopson Home
1695 Lenape Road, West Chester, PA 19382

County of Residence of First Listed Defendant    Chester
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☒ 3 Federal Question *(U.S. Government Not a Party)* |
| ☐ 2 | U.S. Government Defendant | ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury | | **INTELLECTUAL PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | Liability | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 880 Defend Trade Secrets Act of 2016 | ☐ 480 Consumer Credit (15 USC 1681 or 1692) |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | | ☐ 485 Telephone Consumer Protection Act |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☒ 440 Other Civil Rights | **Habeas Corpus:** | | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation - Transfer | | ☐ 8 Multidistrict Litigation - Direct File |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. sec. 1983

Brief description of cause:
neglect/abuse

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
in excess of $1M

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*    JUDGE _____ DOCKET NUMBER _____

DATE _____ SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

## DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ 1128 Hollow Road, Chester Springs, PA 19425 _____

Address of Defendant: _____ 1695 Lenape Road, West Chester, PA 19382 _____

Place of Accident, Incident or Transaction: _____ 1695 Lenape Road, West Chester, PA 19382 _____

---

*RELATED CASE, IF ANY:*

Case Number: _____   Judge: _____   Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?   Yes ☐   No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?   Yes ☐   No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?   Yes ☐   No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?   Yes ☐   No ☑

I certify that, to my knowledge, the within case ☐ is / ☐ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: _____8.24.21_____   _____sign here_____   207566
_____   *Attorney-at-Law / Pro Se Plaintiff*   *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

*A.   Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☑ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    *(Please specify):* _____

*B.   Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury *(Please specify):* _____
7. ☐ Products Liability
8. ☐ Products Liability – Asbestos
9. ☐ All other Diversity Cases
    *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____Ian T. Norris, Esquire_____, counsel of record *or* pro se plaintiff, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: ___8.24.21_____   _____*Attorney*_____ *Plaintiff*   207566
                                                                              *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance

*Civ. 609 (5/2018)*

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| BARBARA TAMMARO, as Administratrix : <br> of the Estate of JULIANNE MARIE : <br> KEHLER, Deceased, : <br> 1128 Hollow Rd. : <br> Chester Springs, PA 19425 : <br> : <br> Plaintiff, : <br> v. : <br> COUNTY OF CHEST, POCOPSON HOME: <br> 1695 Lenape Road : <br> West Chester, PA 19382 : <br> : <br> Defendant(s). : | NO.: _____ |

## COMPLAINT IN CIVIL ACTION

AND NOW, comes the Plaintiff, Barbara Tammaro, as Administratrix of the Estate Julianne Marie Kehler, deceased, by and through counsel, Ian T. Norris, Esquire, and Brain D. Reddick, Esquire, of Reddick Moss, PLLC, files the instant Complaint in Civil Action, and in support thereof avers the following:

### I.        PARTIES

#### A.        Plaintiff

1.        Julianne Marie Kehler was an adult individual and resident of Pocopson Home from January 18, 2018, through February 4, 2020.

2.        Julianne Marie Kehler passed away on February 4, 2020.

3.        Plaintiff, Barbara Tammaro is an adult individual residing at 1128 Hollow Rd., Chester Springs, PA 19425.

4.        Plaintiff, Barbara Tommaro, is the sister of Julianne Marie Kehler, was appointed Administratrix of the Estate of Julianne Marie Kehler on April 29, 2021, by the Register of Wills

in the Register of Wills of Chester County, Pennsylvania. A copy of the short certificate is attached hereto as **Exhibit "A"**.

5.     Plaintiff brings this action as the personal representative of decedent, Julianne Marie Kehler, on behalf of all those entitled by law to recover damages for the wrongful death of Julianne Marie Kehler.

6.     Julianne Marie Kehler did not bring an action to recover damages for personal injuries during her lifetime, and no other action has been filed to recover damages for the wrongful death of Julianne Marie Kehler.

7.     Julianne Kehler's wrongful death beneficiaries are as follows:

   a.   Sabrina Miller, 51 Pine Tree Dr., Philadelphia, PA 19468, daughter of Julianne Kehler.

### B.     Defendant

8.     Defendant, County of Chester, Pocopson Home, (hereinafter referred as "Defendant") is located at 1695 Lenape Road, West Chester, PA 19382, and is owned and operated by Chester County, Pennsylvania, and as such is acting under the color of state law.

9.     At all times material hereto, Pocopson Home is operated as a "skill nursing facility" as defined by 42 U.S.C. § 1395i-3,

10.    At all times relevant hereto, Pocopson Home was acting independently, and by and through its authorized agents, employees, servants, contractors, subcontractors, staff and/or partners, and those persons granted privileges at the Pocopson Home and holding itself and its agents, employees, servants, contractors, subcontractors, staff and/or partners, and those persons granted privileges at the Pocopson Home, out to the public as competent and skillful healthcare providers and practitioners of medicine; and which is personally, directly and vicariously liable,

among other things within the Complaint, for the acts and omissions of itself, its agents, employees, servants, contractors, subcontractors, staff and/or partners all of whom played a role in the care provided to Julianne Marie Kehler and in the operation of the Pocopson Home.

11.     At all times material hereto, the Defendant owed duties indicated within this Complaint, some of which were non-delegable, to the residents of the Pocopson Home, including Julianne Marie Kehler, such duties being conferred by statue, existing at common law, and/or being voluntarily assumed by the Defendant.

12.     At all times material hereto, the Defendant owned, operated, managed and controlled the Pocopson Home, and engaged in the business of providing healthcare, medical services, therapy, rehabilitation, skilled nursing care, and custodial care services to the general public.

## II.     <u>JURISDICTION AND VENUE</u>

13.     This case asserts wrongful death and survival actions for Deprivation of Civil Rights Enforceable via 42 U.S.C. § 1983.

14.     Accordingly, the instant case presents issues of federal law, jurisdiction is proper in this forum as federal question pursuant to 28 U.S.C. § 1331.

15.     This court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367, which provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." <u>See</u> 28 U.S.C. § 1367(a).

16.     Under 28 U.S.C. § 1391(b)(2), venue is appropriate in the Eastern District of Pennsylvania as a substantial part of the events or omissions giving rise to the instant claim occurred in this judicial district.

### III.     JURY DEMAND

17.     Plaintiff, Barbara Tammaro, as Administratrix of the Estate Julianne Marie Kehler, deceased, demands a trial by jury.

### IV.     FACTUAL BACKGROUND

#### A.     Conduct of the Defendant

18.     Julianne Marie Kehler was resident of Pocopson Home from January 18, 2018, through February 4, 2020, with intermittent hospitalizations.

19.     Julianne Marie Kehler required reliable assistance and skilled care in order to complete her activities of daily living and rehabilitation, which necessitated her admission to Pocopson Home.

20.     In exchange for financial consideration, and pursuant to the admission contract, Julianne Marie Kehler was admitted to the Pocopson Home in order to obtain and be provided with that assistance.

21.     During her residency at Pocopson Home, Julianne Marie Kehler was a recipient of Medicaid benefits pursuant to 42 U.S.C.A. § 1396, et seq.

22.     During her residency at Pocopson Home, Julianne Marie Kehler was also recipient of Medicare.

23.     When the Defendant agreed to admit Julianne Marie Kehler, the Pocopson Home assumed the obligation of providing for her total healthcare, including the provision of nutrition,

hydration, activities of daily living, medical, skilled nursing, occupational therapy, speech therapy, physical therapy, and daily custodial care.

24.     The Defendant exercised complete and total control over the healthcare of all the residents of the Pocopson Home, including Julianne Marie Kehler.

25.     As defined by 40 P.S. § 1303.503, the Defendant was a licensed health care provider at all times relevant hereto.

26.     At all times material hereto, Pocopson Home held itself out to the public as a professional in the field of adult nursing care, with the expertise necessary to maintain the health and safety of elderly residents such as Julianne Marie Kehler.

27.     The Defendant and its employees and agents, had a duty to ensure that all persons providing care within Pocopson Home facility were competent to provide that care to its residents, including Julianne Marie Kehler.

28.     At all times material hereto, Pocopson Home and its authorized agents, employees, servants, contractors, subcontractors, staff and/or partners, and those persons granted privileges at the Pocopson Home owed a duty not to violate the federally protected legal rights of any resident, including Julianne Marie Kehler.

29.     At all times material hereto, Pocpson Home and its authorized agents, employees, servants, contractors, subcontractors, staff and/or partners, and those persons granted privileges at the Pocopson Home had a duty to comply with all provisions of the Omnibus Budget Reconciliation Act of 1987/Federal Nursing Home Reform Act, 42 U.S.C. § 1396r, 1396a(w) at incorporated by 42 U.S.C. § 1396(r) and the implementing regulations found at 42 C.F.R. § 483, et seq.

30.     The above noted statutes and regulations are designed and intended to protect persons such as Julianne Marie Kehler against the negligent and reckless care she encountered and the harm she suffered while a resident of the Pocopson Home.

31.     At all times material hereto, the Defendant had a duty to establish, adopt and enforce adequate rules and policies and procedures to ensure quality care for residents and addressed the clinical and daily needs of the residents of Pocopson Home, including Julianne Mare Kehler.

32.     At all times material hereto, the Defendant had a duty and responsibility to ensure those policies and procedures addressed the needs of the residents of the Pocopson Home, which included Julianne Marie Kehler.  This includes policies and procedures addressing the recognition and/or treatment of Julianne Marie Kehler's medical conditions, so as to ensure that timely and appropriate care was provided for these conditions whether at the Pocopson Home or obtained from other medical providers.

33.     The Defendant exercised ultimate authority over all budgets and had final approval over the allocation of resources for staffing, supplies, capital expenditures, and operations of Pocopson Home.

34.     The Defendants, acting through their Administrators, members, managers, and board of directors, had the duty and responsibility to oversee the standard of professional practice by the members of their staff at the Pocopson Home, including regarding the conduct at issue herein.

35.     At all times material hereto, the Defendant had a duty to employ an adequate number of properly trained medical and nursing staff who were qualified to properly care for the residents at Pocopson Home, including Julianne Marie Kehler.

36.     The Defendant had a duty and responsibility to ensure that the Pocopson Home and its residents, including Julianne Marie Kehler, were provided with sufficient staff and resources to guarantee the timely recognition and appropriate treatment of their medical, nursing and/or custodial needs whether within Pocopson Home or from other medical care providers.

37.     Despite their knowledge of the likelihood of harm due to these insufficient staffing levels, and despite Complaints of insufficient staffing from staff members, residents and their families, the Defendant recklessly and/or negligently disregarded the consequences of its actions, and/or negligently caused staffing levels at the Pocopson Home to be set at a level that did not allow staff to sufficiently meet the needs of the residents, including Julianne Marie Kehler.

38.     The Defendant knowingly sacrificed the quality of care received by all residents, including Julieanne Marie Kehler, by failing to manage, care, monitor, document, chart, prevent, diagnose and/or treat the injuries and illnesses suffered by Julianne Marie Kehler, as described herein, which included aspiration, asphyxia and death.

39.     At all times material hereto, the Defendant was operating personally or through their agents, servants, workers, employees, contractors, subcontractors, staff, and/or principals, who acted with actual, apparent and/or ostensible authority, and all of whom were acting within the course and scope of their employment and under the direct and exclusive control of the Defendant.

**B.     Injuries of Julianne Marie Kehler at the Pocopson Home**

40.     Upon admission to Pocopson and during the relevant time period, Juliann Marie Kehler was dependent upon the staff for her physical, mental, psycho-social, medical nursing and custodial needs, requiring total assistance with activities of daily living, and she had various illnesses and conditions that required evaluation and treatment.

41.     The Defendant knew or should have known that Julianne Marie Kehler was at risk for aspiration, asphyxia and death.

42.     The Defendant, through its acts and omissions, deprived Julianne Marie Kehler of adequate care, treatment, supervision, and medicine and caused her to suffer numerous illnesses and injuries, which included aspiration, asphyxia and death.

43.     As a result of the severity of the negligence the Defendant inflicted upon Julianne Kehler, the deterioration of her health and physical condition was negligently accelerated and resulted in both physical and emotional injuries, a loss of dignity, degradation, emotional trauma, severe pain, suffering and mental anguish, unnecessary hospitalizations, and death.

44.     During her residency at Pocopson Home, nursing staff failed to provide adequate supervision, care and treatment, and a result, Ms. Kehler frequently found pocketing food, vomiting undigested food, and ultimately, she suffered aspiration, asphyxia, and death.

45.     During her residency at Pocopson Home, Julianne Marie Kehler, was dependent on Pocopson Home, its officers, agents and employees to assure that her medications and treatments were in accordance with acceptable medical practice.

46.     The Defendant, and its officers, agents and employees, failed, refused or neglected to perform the duties to provide reasonable and adequate health care and supervision to and for Julianne Marie Kehler.

47.     The Defendant, its employees, agents, officers and servants provided care and treatment to Julianne Marie Kehler and all of the alleged negligent, reckless and wanton acts, omissions and occurrences, herein described, were performed by the Defendant's employees, agents, officers and servants within the course and scope of their agency and employment with defendants and in furtherance of defendants' business.

48.     As set forth in detail in the paragraphs below, Pocopson Home's nursing staff acted with actual malice and willful misconduct which resulted in physical and emotional harm to Julianne Marie Kehler and ultimately caused her death.

49.     Julianne Kehler, 67, was admitted to the Pocopson Home on January 19, 2018, due to unsafe behaviors at a previous nursing home, Gardens of Pottstown.

50.     At that time, she had a past medical history including dementia, diabetes mellitus type 2, frontal lobe function deficit, vitamin D deficiency, major depressive disorder, essential hypertension, hammer toes, dysphagia, history of urinary tract infections, and an eating disorder.

51.     It was noted on the admission evaluation that Ms. Kehler was diagnosed with early on-set dementia at age 58 and had significant cognitive impairment and short- and long-term memory impairment. She required total assistance with activities of daily living. She ambulated independently and she paced and wandered into rooms. Additionally, she as noted to have a history of falls.

52.     At the time of admit to Pocopson Home, Ms. Kehler was on a pureed diet with thin liquids, and she required assistance with eating. She was noted to pocket foods which would lead to vomiting and required constant cueing.

53.     Ms. Kehler suffered injuries during her admission to the Facility, but prior to the statute of limitations, which put the Facility on notice as to these injuries and issues with care. These injuries included, multiple falls with injuries, including a fall that resulted in a left intertrochanteric hip fracture and required surgical repair, development and worsening of wounds on the sacrum, right great toe, left great toe, abrasions, scratches, blisters, bruises, infections, including urinary tract infections, pyelonephritis, a wound infection that grew gram negative rods and gram-positive cocci, Escherichia coli, sepsis, conjunctivitis, hyperglycemia, azotemia,

hypernatremia, hypokalemia, hyperchloremia, an assault by another resident that resulted in additional bruising, medication errors, malnutrition, dehydration, weight loss, and pain.

54.     Also, prior to the statute of limitations, from January 19, 2018, through August 2019, Defendants' Facility records document that Ms. Kehler's diet status was changed multiple times, including from pureed diet with thin liquids to modified puree diet, to soft chopped diet, to a pureed diet with nectar thick diet and her medications crushed in puree, to soft texture and thin liquids, back to pureed, back to a modified pureed diet to allow soft snacks, sandwiches, and desserts, to a modified puree texture and thin liquids diet, to pureed texture and thin liquids. She was documented with multiple episodes of vomiting with and without undigested food and she was known to pocket food on occasions. It was recommended that she be placed on aspiration precautions.

55.     On February 4, 2020, progress notes provided that at approximately 6:38 p.m., Ms. Kehler was found by Sade C. Collins, LPN in a chair in the tv lounge unresponsive. Ms. Collins documented that she returned Ms. Kehler to her room and a Code Blue was initiated by the nursing supervisor at approximately 6:40 p.m. CPR was initiated, and it was noted that paramedics arrived on the scene at approximately 6:50 p.m. It was documented that prior to the unresponsive episode, at approximately 4:53 p.m., Ms. Kehler's blood sugar level was 230 and 4 units of Humalog were administered. At that time, Ms. Kehler was noted to have offered no complaints.  It was further documented that CPR was stopped at approximately 7:18 p.m.

56.     A second nursing progress note by Jeanette Dunn, RN, indicated that Ms. Dunn had been called to see Ms. Kehler in the lounge area at dinner time. Ms. Dunn documented that Ms. Kehler was unresponsive, cyanotic and had no pulse or respirations. A mouth sweep was completed initially since dinner was consumed and portions of dinner were removed. Thereafter,

she was placed on the floor CPR to be initiated and an AED unit was applied. Ms. Dunn further documented as follows: "911 was called and arrived. Oral airway inserted. Attempted to intubate, suction, resident vomited, suctioned more. IV inserted with 1 liter NSS infusion. Epinephrine first give at 1857. 2nd 1901, 3rd 1904, 4th 1908. 1910 patient successfully intubated. 1912 5th epinephrine given. On cardiac monitor and compression machine (Lucas) throughout the process. No shocks received from AED. Resident asystole throughout the code. Paramedic called and discussed case with Physician. (Dr. Cohen) order received to end resuscitation efforts at 1918. Director of Nursing notified. Coroner William Ginkleman notified and discussed case. Office was notified and will not make an on-sight visit. Dr. Jawad notified and will sign the death certificate. Awaiting family arrival. Ceased to breathe at 1918 on 2/4/2020."

57.    According to EMS records, the Longwood Fire Company was dispatched to Pocopson Home at 1844. Paramedics were at Ms. Kehler by 1851. They noted that upon arrival Ms. Kehler was lying on the floor supine and unresponsive with high quality CPR being performed by "FD Personnel". The paramedics also documented that AED defibrillator pads were in place and the AED was on. It was noted that the chief complaint was cardiac arrest with a duration of 30 minutes. Pocopson personnel reported that Ms. Kehler was found approximately a half an hour ago in the day room blue and unresponsive. They reported that staff advised them that a tech had seen Ms. Kehler eating an egg salad sandwich. When she came back a short time later, she found Ms. Kehler blue and not responding and she went and found a nurse. The nurse came into the lounge and wheeled Ms. Kehler out of the day room and to the nurses station to get a nursing supervisor. Once the nursing supervisor assessed Ms. Kehler, they moved her down 2 floors to her room. Ms. Kehler was then moved into her bed and was left in her room. After a short time, the staff came back into the room and had realized then that Ms. Kehler was in cardiac arrest. They

moved her to the floor and called for EMS. The FD reported that when they arrived they found staff performing CPR on Ms. Kehler and they took over compressions. The FD reported that Ms. Kehler was placed on AED and no shock was advised so they continued CPR until EMS arrived. FD personnel reported that they had removed large pieces of food from Ms. Kehler's mouth when they began attempting to ventilate her.

58.     Upon belief "FD" and "FD Personnel" refer to the fire department employees.

59.     The same EMS records provided that at 1900 paramedics attempted to intubate Ms. Kehler but failed due to Ms. Kehler's anatomy and the presence of a significant amount of vomitus and pieces of food in the airway. At 1902, suction was performed. At 1905 another attempt of intubating Ms. Kehler was not successful due to there still being large amounts of food present in the back of the airway. All the pieces of food were attempted to be removed but the effort was futile as they are small and viscous. At 1908 suction was performed. At 1910 intubation was successful. At 1916 there was a medical consult with William Paul and Dr. Megan Cohen via cellular. Orders were given to terminate resuscitative efforts as Ms. Kehler had no significant changes. Time of death was 1918.

60.     At approximately 8:30 p.m., Ms. Kehler's family arrived and staff explained what had occurred. The family requested they would like an autopsy completed. A follow up call to the coroner was placed and made aware of the family's wishes and was told an autopsy would not be conducted but the family can request a private autopsy from the funeral home.

61.     The discharge summary stated that Ms. Kehler's cause of death was coronary artery disease but was revised to asphyxia probable aspiration of food particles.

62.     Upon information and belief, Ms. Kehler did not recover from the injuries she suffered at Defendants' Facility and succumbed to those injuries on February 4, 2020.

63.     Ms. Kehler's death certificate lists asphyxia and probable aspiration of food particles as her immediate causes of death.

64.     The Defendant was fully aware of Julianne Marie Kehler's medical history, medical conditions, and co-morbidities and the level of nursing care she would require while a resident at Pocopson Home.

65.     Julianne Marie Kehler's medical condition and death was a direct result of the negligence, carelessness, recklessness and wanton care provided by the Defendant.

66.     The care plan developed by the Defendant for Julianne Marie Kehler was inadequate, inaccurate and/or incomplete.

67.     Accordingly, Julianne Marie Kehler's care plan did not address her relevant care needs, was not implemented and/or was not revised, to adequately address her risk of aspiration and asphyxia.

68.     The Defendant failed to plan, develop or implement any necessary interventions to address or minimize the risk of Julianne Marie Kehler's risk of aspiration and asphyxia.

69.     The Defendant failed to appropriately supervise Julianne Marie Kehler while she was eating.

70.     The Defendant failed to ensure that Julianne Marie Kehler only ate approved food.

71.     As a result of the Defendant's failure to properly assess, treat, and supervise the above described conditions, Julianne Maire Kehler suffered a significant decline in health which directly resulted in her death.

72.     The Defendant's acts and the acts of its employees constituted actual malice or willful misconduct and were a direct cause of the injury and death of Julianne Marie Kehler.

73.     Pocopson Home is a 275-bed skilled nursing home facility.

74.     The Defendant had a longstanding, systematic and continuous custom, practice and/or policy to understaff physicians and nursing staff at Pocopson Home.

75.     The Defendant had actual and/or constructive knowledge that its custom, practice and/or policy of understaffing Pocopson Home, with insufficient physicians and nursing staff to care for patients, was a substantial factor in bringing harm to its residents, including Julianne Marie Kehler.

### COUNT ONE
### DEPRIVATION OF CIVIL RIGHTS ENFORCEABLE
### BY 42 U.S.C. § 1983 – WRONGFUL DEATH

**Plaintiff, Barbara Tammaro, as Administratrix of the Estate Julianne Marie Kehler, deceased**
**v.**
**Chester County, Pocopson Home ("Defendant")**

76.     Plaintiff hereby incorporates by reference the preceding paragraphs as though the same were fully set forth at length herein.

77.     Defendant is an agent of the Commonwealth of Pennsylvania and at all times relevant to this Complaint was acting under color of state law.

78.     Defendant is bound generally by the 1987 Omnibus Budget Reconciliation Act (OBRA) and the Federal Nursing Home Reform Act (FNHRA) which was contained within the 1987 OBRA. See: 42 U.S.C. § 1396r; 42 U.S.C. §1396a(w) (as incorporated by 42 U.S.C. §1396(r).)

79.     Defendant is also bound generally by the OBRA/FNHRA implementing regulations found at 42 C.F.R. § 483, et seq., which served to define specific statutory rights set forth in the above mentioned statues.

80.     The specific detailed regulatory provisions as well as the statutes in question create rights which are enforceable pursuant to 42 U.S.C. § 1983, as the language of these regulations and statutory provisions clearly and unambiguously creates those rights.

81.     The Defendant in derogation of the above statute and regulations, and as a custom and policy, failed to comply with the aforementioned regulations as follows:

a.      failure to ensure that residents, including Julianne Marie Kehler, did not suffer verbal, physical and mental abuse as required by 42 C.F.R. § 483.12;

b.      failure to develop and implement written policies and procedures that prohibited the mistreatment, neglect and abuse of residents such as Julianne Marie Kehler as required by 42 C.F.R. § 483.12;

c.      failure to adequate train new and existing staff, individuals provided services under a contractual arrangement, and volunteers to care for residents, including Julianne Marie Kehler as required by 42 C.F.R. § 483.12 and 42 C.F.R. § 483.95;

d.      failure to treat resdients, including Julianne Marie Kehler, with respect and dignity, as required by 42 C.F.R. § 483.10 and 42 U.S.C. § 1396r(b)(1)(A);

e.      failure to promote the care of residents, including Julianne Marie Kehler, in a manner and in an environment that maintained or enhanced their quality of life while recognizing each resident's individuality as required by 42 C.F.R. § 483.10 and 42 U.S.C. §1396r(b)(1)(A);

f.      failure to develop a comprehensive care plan for residents, including Julianne Marie Kehler, that included instructions needed to provide effective and person-centered care of the resident that met the professional

standards of quality care as required by 42 C.F.R. §483.21 and 42 U.S.C. § 1396(r)(b)(2)(A);

g.     failure to provide residents, including Julianne Marie Kehler, the necessary care and services to allow her to attain or maintain the highest, practicable, physical, mental and psychosocial well-being, as required 42 C.F.R. § 483.24 and 42 U.S.C. § 1396(r)(b)(3)(A);

h.     failure to conduct an assessment of a resident, such as Julianne Marie Kehler, as set out in 42 U.S.C. §1396(r)(b)(3)(A), promptly upon admission and after a significant change in the resident's physical or mental condition, as required by § 42 U.S.C. §1396(r)(b)(3)(C)(i)(ii) and 42 C.F.R. § 483.20;

i.     failure to periodically review and revise a resident's written plan of care by an interdisciplinary team after each of the residents' assessments as set out in 42 U.S.C. §1396(r)(b)(3)(A) as required by § 1396(r)(b)(2)(C) and 42 C.F.R. § 483.21;

j.     failure to use the results of the required resident's assessments, as described above, in developing, reviewing and revising the resident's plan of care as described in 42 U.S.C. § 1396(r)(b)(2) and as required by 42 U.S.C. § 1396(r)(b)(3)(D);

k.     failure to ensure that residents, including Julianne Marie Kehler, were provided medically-related social services to attain or maintain the highest practicable physical, mental and psychosocial well-being as required by 42 C.F.R. § 483.40(c)(d) and 42 U.S.C. § 1396(r)(b)(4)(ii);

l.      failure to ensure that an ongoing program, directed by a qualified professional, of activities designed to meet the interests of each resident and support the physical, mental and psychosocial well-being of each resident or patient, including Julianne Marie Kehler, as required by 42 C.F.R. § 483.24 and 42 U.S.C. §1396(r)(b)(4)(A)(v);

m.      failure to ensure that the personnel responsible for the care  and treatment of residents, such as Julianne Marie Kehler, were provided by qualified persons in accordance with each resident's plan of care as required by 42 §1396(r)(b)(4)(B);

n.      failure to provide sufficient nursing staff to provide nursing and related services to assure resident safety and that would allow residents, including Julianne Marie Kehler, to attain or maintain the highest practicable, physical, mental and psychosocial well-being, as required by 42 C.F.R. § 483.35 and 42 U.S.C. § 1396(r)(b)(4)(C);

o.      failure to maintain clinical records on all residents, including Julianne Marie Kehler, which included the plans of care as set out in 42 U.S.C. § 1396(r)(b)(2) and resident's assessment as set out in 42 U.S.C. § 1396(r)(b)(3), as required by 42 U.S.C. § 1396(r)(b)(6)(C);

p.      failure administer Pocopson Home in a manner that enabled the facility to use its resources effectively and efficiently to allow each resident, including Julianne Marie Kehler, to attain or maintain the highest practicable physical, mental and psychosocial well-being as required by 42 C.F.R. §483.70, 42 U.S.C. §1396(r)(d)(A) and 42 U.S.C. §1396(r)(d)(1)(C);

q.　failure to ensure that the administrator of Pocopson Home met the standards established under 42 U.S.C. §1396(r)(f)(4) as required by 42 U.S.C. §1396(r)(d)(1)(C);

r.　failure to ensure that the Pocopson Home operated and provided services in compliance with all applicable Federal, State, and local laws, and within the accepted professional standards which apply to professionals providing services to residents, including Julianne Marie Kehler, operating such a facility as Pocopson Home, as required by 42 U.S.C. § 1396(r)(d)(4)(A); and,

s.　failure to ensure that Pocopson Home's administrator and director of nursing properly monitored and supervised subordinate staff, including staff education, training, qualifications, and competencies, thereby failing to ensure the health and safety of residents or patients, including Julianne Marie Kehler, in derogation of 42 C.F.R. § 483.70 and 42 U.S.C. § 1396(a)(w).

119.　The systematic and continuous understaffing is evidenced at medicarecompare.gov, the official US Government Site for Medicare, which gave Pocopson Home a staffing rating of "above average."

120.　Pursuant to medicarecompare.gov, the official US Government Site for Medicare, Pocopson Home's total number of licensed nurse staff hours per resident per day is 1 hour and 46 minutes.

121.　Pursuant to www.medicare.gov, the official US Government Site for Medicare, Pocopson Home's total number of RN hours per resident per day is 34 minutes.

122.    Evidence of the systematic violations of these rights, and that the violations of these rights were part of a "custom and policy.

123.    Further evidence of the systematic violations of these rights, and that the violations of these rights were part of a "custom and policy" as evidenced by the inspection reports prepared by the Pennsylvania Department of Health as a result of inspections performed from 2018 through 2021. The Department of Health records are attached and incorporated by reference as **Exhibit "B"** to this Complaint.

124.    The Department of Health surveys regarding Pocopson Home, clearly establishes that the violations of these rights were not limited to singular and isolated incidents, but rather were part of a much more broad and consistent "custom and policy" of the defendant to violate patients' rights.

125.    The Defendant knew, or should have known, of the aforementioned issues that were occurring with the care of Julianne Marie Kehler, as they were placed on actual and/or constructive notice of the same, through their own reports, CMS Quality Indicator Reports, CASPER Reports, and Federal and Pennsylvania Department of Health Surveys.

126.    As a proximate result of the Defendant's actionable derogation of its regulatory and statutory responsibilities as above-described, Julianne Marie Kehler was injured as previously referenced, and suffered pain, emotional distress, economic damages and death as a result of the poor care and treatment which allowed her to suffer aspiration, asphyxia, and result in her untimely death.

127.    As a proximate result of defendant's actionable derogation of its regulatory and statutory responsibilities as above-described, Julianne Marie Kehler was injured as previously referenced, and suffering pain, distress and death as a result of the poor care and treatment which

allowed her to suffer aspiration, asphyxia, and resulted in her untimely death. As such plaintiff has suffered and is entitled to recover the following damages, as well as an award of reasonable counsel fees pursuant to 42 U.S.C. § 1988:

      a.    money for funeral and estate expenses incurred because of the death of Julianne Marie Kehler;

      b.    damages for the lost services, assistance, guidance, counseling, companionship and society of Julianne Marie Kehler;

      c.    all pecuniary benefits which they would have received from Julianne Marie Kehler;

      d.    the expenses of administration; and

      e.    other losses and damages permitted by law.

**WHEREFORE**, the Plaintiff, Barbara Tammaro, as Administratrix of the Estate Julianne Marie Kehler, deceased, demands compensatory and consequential damages from the Defendant in excess of Seventy-Five Thousand Dollars ($75,000.00), plus interest, costs of suit, attorneys' fees and such other just and equitable relief as this Honorable Court deems proper.

<u>**COUNT TWO**</u>
<u>**DEPRIVATION OF CIVIL RIGHTS ENFORCEABLE BY 42 U.S.C. §1983 - SURVIVAL**</u>

**Plaintiff, Barbara Tammaro, as Administratrix of the Estate Julianne Marie Kehler, deceased**
**v.**
**Chester County, Pocopson Home ("Defendant")**

128.    Plaintiff hereby incorporates by reference the preceding paragraphs as though the same were fully set forth at length herein.

129.    As a proximate result of the Defendant's actionable derogation of its regulatory and statutory responsibilities as above-described, Julianne Marie Kehler was injured as described

above and suffered pain, distress and death as a result of the poor care and treatment she received at Pocopson Home, including allowing her to suffer aspiration, asphyxia, and resulted in her untimely death.

130.    Thus, Plaintiff has suffered and is entitled to recover the following damages, as well as an award of reasonable counsel fees pursuant to 42 U.S.C. § 1983:

      a.    Pain, suffering, inconvenience, fright and mental suffering, including anxiety and nervousness of Julianne Marie Kehler until the time of her death;

      b.    Nursing expenses incurred on Julianne Marie Kehler's behalf; and

      c.    other losses and damages permitted by law.

**WHEREFORE**, the Plaintiff, Barbara Tammaro, as Administratrix of the Estate Julianne Marie Kehler, deceased, demands compensatory and consequential damages from the Defendant in excess of Seventy-Five Thousand Dollars ($75,000.00), plus interest, costs of suit, attorneys' fees and such other just and equitable relief as this Honorable Court deems proper.

**COUNT THREE**
**MEDICAL NEGLIGENCE**
**SURVIVAL ACTION PURSUANT TO 42 PA.C.S. §8302**

**Plaintiff, Barbara Tammaro, as Administratrix of the Estate Julianne Marie Kehler, deceased**
**v.**
**Chester County, Pocopson Home ("Defendant")**

131.    Plaintiff hereby incorporates by reference the preceding paragraphs as though the same were fully set forth at length herein.

132.    Plaintiff brings this Count, Survival Action, pursuant to 42 Pa.C.S. §8302, on behalf of the Estate of Julianne Marie Kehler.

133.    Plaintiff's decedent, Julianne Maire Kehler, did not bring any action during her lifetime, nor has any other action been commenced on behalf of Julianne Marie Kehler against the Defendant herein.

134.    The following persons are entitled to share under this cause of action in the estate of Julianne Marie Kehler: The Estate of Julianne Marie Kehler and her daughter Sabrina Miller.

135.    Plaintiff hereby claims damages for the pain, suffering, and inconvenience suffered by Plaintiff's decedent, Julianne Marie Kehler, up to and including the time of her death, all of which was caused by Defendants' willful misconduct, actual malice, breach of duties, negligence, carelessness, and recklessness, acting by and through its employees, servants, agents, ostensible agents and work persons, and consisted, inter alia, of the following:

    a.    failure to properly supervise, monitor, observe, and assess Julianne Marie Kehler's medical condition;

    b.    failure to refer Julianne Marie Kehler to appropriate professionals for assessment, diagnosis, intervention, monitoring and evaluation;

    c.    failure to prevent Julianne Marie Kehler from suffering pain as a result of aspiration and asphyxia;

    d.    failure to request appropriate medical consultations to assess, monitor and treat Julianne Marie Kehler's eating, chewing, and swallowing conditions;

    e.    failure to create appropriate care plan Julianne Marie Kehler's risk factors for aspiration and asphyxia;

    f.    failure to transfer Julianne Marie Kehler to the hospital for emergent care in a timely fashion;

a.    failure to advise Plaintiff's family members of Julianne Marie Kehler's decline in health and/or significant changes in her condition;

b.    failure to advise and/or falsely assuring Julianne Marie Kehler's family members that she was receiving given proper care and treatment, thereby misleading them;

c.    failure to supervise medical care rendered to Julianne Marie Kehler;

d.    failure to supervise Julianne Marie Kehler;

e.    failure to have sufficient staff to provide nursing and related services to attain or maintain the highest practicable physical, mental and psychological well-being of Julianne Marie Kehler;

f.    failure to attend to Julianne Marie Kehler;

g.    failure to hire and train appropriate and competent medical and nursing personnel to properly monitor, supervise and/or treat Julianne Marie Kehler's medical condition;

h.    failure to hire sufficient number of trained and competent medical and nursing personnel who knew how to meet Julianne Marie Kehler's medical needs;

i.    failure to terminate and/or reassign unqualified and incompetent medical and nursing personnel, who directly caused Julianne Marie Kehler's death;

j.    failure to provide 24-hour nursing services from enough qualified medical and nursing personnel to meet the total nursing needs of Julianne Marie Kehler;

k.      failure to adequate train nursing staff to provide basic care, monitoring and address the needs of Julianne Marie Kehler;

l.      failure to provide sufficient numbers of staff to meet Julianne Marie Kehler's fundamental care needs, including adequate supervision to prevent aspiration and asphyxia;

m.     abandonment of Julianne Marie Kehler; and

g.     failure to utilize practices, procedures and medical devices to minimize Ms. Kehler's risk of aspiration and/or asphyxia.

136.    Further, Plaintiff hereby claims damages for the fright and mental suffering attributable to the peril leading to the death of Julianne Marie Kehler, all of which was caused by Defendants' willful misconduct, actual malice, breach of duties, negligence, carelessness, and recklessness.

137.    As a direct and proximate result of the negligence and carelessness of the Defendant, Julianne Marie Kehler died on February 4, 2020.

138.    As a direct and proximate result of the negligence and carelessness of the Defendant, Julianne Marie Kehler was caused to suffer, *inter alia*, aspiration, asphyxia, mental anguish, severe emotional pain and suffering, and premature death.

139.    The Defendant's failure to exercise reasonable care as alleged above comprised outrageous conduct under the circumstances, manifesting a wanton and reckless disregard of the rights of Julianne Marie Kehler.

**WHEREFORE**, the Plaintiff, Barbara Tammaro, as Administratrix of the Estate Julianne Marie Kehler, deceased, demands compensatory and consequential damages from Defendant

Pocopson in excess of Seventy-Five Thousand Dollars ($75,000.00), plus interest, costs of suit and such other just and equitable relief as this Honorable Court deems proper.

### COUNT FOUR
### WRONGFUL DEATH PURSUANT TO 42 PA.C.S. §8301

**Plaintiff, Barbara Tammaro, as Administratrix of the Estate Julianne Marie Kehler, deceased**
**v.**
**Chester County, Pocopson Home ("Defendant")**

140.    Plaintiff hereby incorporates by reference the preceding paragraphs as though the same were fully set forth at length herein.

141.    The Defendant contributed to and/or caused the death of Plaintiff's decedent, Julianne Maire Kehler, through its own negligence, carelessness, and reckless conduct as well as through its agents, servants, and/or employees.  As a result, Julianne Marie Kehler died on February 4, 2020.

142.    Plaintiff's decedent, Julianne Marie Kehler, did not bring any action during her lifetime, nor has any other action been commenced on behalf of Julianne Marie Kehler against the Defendant herein.

143.    Plaintiff's decedent, Julianne Marie Kehler, left the following survivors: the Estate of Julianne Marie Kehler and her daughter Sabrina Miller.

144.    Plaintiff, Barbara Tommaro, is the sister of Julianne Marie Kehler, was appointed Administratrix of the Estate of Julianne Marie Kehler on April 29, 2021, by the Register of Wills in the Register of Wills of Chester County, Pennsylvania. See Exhibit A.

145.    Plaintiff brings this action on behalf of Julianne Marie Kehler's estate under and by virtue of the Pennsylvania Judiciary Act, 42 Pa.C.S. 8301, known as the Wrongful Death Statute, to recover any and all damages legally appropriate hereunder.

146.    The following persons have independent causes of action and are entitled to recover as Wrongful Death beneficiaries of Julianne Marie Kehler: the Estate of Julianne Marie Kehler and her daughter Sabrina Miller.

147.    Plaintiff and the aforementioned Wrongful Death beneficiaries, claim damages for the pecuniary loss suffered by Julianne Marie Kehler's survivor(s) as a result of the death of Julianne Marie Kehler caused by the willful misconduct, actual malice, negligence and carelessness of the Defendant, acting by and through its employees, servants, agents, ostensible agents and work persons, and consisted, *inter alia*, of the following:

n.      failure to properly supervise, monitor, observe, and assess Julianne Marie Kehler's medical condition;

o.      failure to refer Julianne Marie Kehler to appropriate professionals for assessment, diagnosis, intervention, monitoring and evaluation;

p.      failure to prevent Julianne Marie Kehler from suffering pain as a result of aspiration, and asphyxia.

q.      failure to request appropriate medical consultations to assess, monitor and treat Julianne Marie Kehler's eating, chewing, and swallowing conditions;

r.      failure to create appropriate care plan Julianne Marie Kehler's risk factors for aspiration and asphyxia;

s.      failure to transfer Julianne Marie Kehler to the hospital for emergent care in a timely fashion;

t.      failure to advise Plaintiff's family members of Julianne Marie Kehler's decline in health and/or significant changes in her condition;

u.      failure to advise and/or falsely assuring Julianne Marie Kehler's family members that she was receiving given proper care and treatment, thereby misleading them;

v.      failure to supervise medical care rendered to Julianne Marie Kehler;

w.      failure to supervise Julianne Marie Kehler;

x.      failure to have sufficient staff to provide nursing and related services to attain or maintain the highest practicable physical, mental and psychological well-being of Julianne Marie Kehler;

y.      failure to attend to Julianne Marie Kehler;

z.      failure to hire and train appropriate and competent medical and nursing personnel to properly monitor, supervise and/or treat Julianne Marie Kehler's medical condition;

aa.     failure to hire sufficient number of trained and competent medical and nursing personnel who knew how to meet Julianne Marie Kehler's medical needs;

bb.     failure to terminate and/or reassign unqualified and incompetent medical and nursing personnel, who directly caused Julianne Marie Kehler's death;

cc.     failure to provide 24-hour nursing services from enough qualified medical and nursing personnel to meet the total nursing needs of Julianne Marie Kehler;

dd.     failure to adequately train nursing staff to provide basic care, monitoring and address the needs of Julianne Marie Kehler;

ee.     failure to provide sufficient staff to meet Julianne Marie Kehler's fundamental care needs, including adequate supervision to prevent aspiration and asphyxia; and

ff.     abandonment of Julianne Marie Kehler.

148.    As a direct and proximate result of the negligence and carelessness of the Defendant, Julianne Marie Kehler died on February 4, 2020.

149.    As a direct and proximate result of the negligence and carelessness of the Defendant, resulting in the death of Julianne Marie Kehler, the beneficiaries described have lost the pecuniary contributions they could have expected to receive from Julianne Marie Kehler and were caused to lose the pecuniary value of the care, comfort, companionship, services, society, tutelage, and assistance of Julianne Marie Kehler.

150.    As a direct and proximate result of the negligence and carelessness of the Defendant, resulting in the death of Julianne Marie Kehler, the beneficiaries described above have lost the support, services, society and comfort of Julianne Marie Kehler.

**WHEREFORE**, Plaintiff, Barbara Tammaro, as Administratrix of the Estate Julianne Marie Kehler, deceased, demands compensatory and consequential damages from defendant Pocopson in excess of Seventy-Five Thousand Dollars ($75,000.00), plus interest, costs of suit, attorneys' fees and such other just and equitable relief as this Honorable Court deems proper.

Respectfully submitted,

**REDDICK MOSS, PLLC**

Dated: 8/24/2021

_____
Ian T. Norris, Esquire
*Attorney for Plaintiff*

## **VERIFICATION**

Plaintiff verifies that the statements made in this Complaint are true and correct to the best of Plaintiff's knowledge, information and belief. To the extent that the Complaint contains averments of law and language of counsel and results of investigation, Plaintiff has relied on counsel. Plaintiff understands that false statements herein are made subject to the penalties of 18 Pa. §4904, relating to unsworn falsification to authorities.

Date: _8-10-2021_

By: _Barbara Tammaro_
Barbara Tammaro, Administratrix
of the Estate of Julianne Marie Kehler,
deceased

<u>**CERTIFICATE OF SERVICE**</u>

I, Ian T. Norris, Esquire, counsel for Plaintiff, do hereby certify that a true and correct copy of the Complaint was served via Sheriff, and U.S. Certified Mail, postage pre-paid, upon the following:

COUNTY OF CHEST, POCOPSON HOME<br>
1695 Lenape Road<br>
West Chester, PA 19382

Respectfully submitted,

**REDDICK MOSS, PLLC**

Dated: 8/24/2021

_____

Ian T. Norris, Esquire
*Attorney for Plaintiff*

# EXHIBIT A

# SHORT CERTIFICATE

COMMONWEALTH OF PENNSYLVANIA            File Number: 1520-2263
COUNTY OF CHESTER

I, MICHELE VAUGHN, Register of Wills, in and for the County of Chester in the Commonwealth of Pennsylvania, do hereby certify that on the 29th day of April, 2021

LETTERS OF ADMINISTRATION
on the Estate of: | were granted to:
    JULIANNE MARIE KEHLER, Deceased | BARBARA TAMARO

having first been qualified well and truly to administer the same. I further certify that no revocation of said Letters appears of record in my office.

Date of Death: 02/04/2020            Given under my hand and seal of office this
Soc. Sec. No.: 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             29th day of April, 2021

                           *Deputy for the Register of Wills*

NOT VALID WITHOUT ORIGINAL SIGNATURE AND IMPRESSED SEAL

# EXHIBIT B

**Department of Health & Human Services**
**Centers for Medicare & Medicaid Services**

Printed: 08/05/2021
Form Approved OMB
No. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 395384 | (X2) MULTIPLE CONSTRUCTION<br><br>A. Building<br><br>B. Wing | (X3) DATE SURVEY COMPLETED<br><br>06/07/2018 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>Pocopson Home | STREET ADDRESS, CITY, STATE, ZIP CODE<br>1695 Lenape Road<br>West Chester, PA 19382 |
|---|---|

For information on the nursing home's plan to correct this deficiency, please contact the nursing home or the state survey agency.

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES<br>(Each deficiency must be preceded by full regulatory or LSC identifying information) |
|---|---|
| F 0582<br><br>Level of Harm - Minimal harm or potential for actual harm<br><br>Residents Affected - Few | Give residents notice of Medicaid/Medicare coverage and potential liability for services not covered.<br><br>Based on review of facility policies and procedures and staff interview, it was determined that the facility failed to ensure the understanding of required Notice of Medicare Provider Non-Coverage and for the appeal process for one of three clinical records reviewed. (Resident # 234)<br><br>Findings include:<br><br>The form Instructions for the Notice of Medicare Non-Coverage (NOMNC) CMS- , (a notice that informs the receipient when care receive from skilled nursing facility is ending and how you can contact a Quality Improvement Organization (QIO) to appeal) instructs that a Medicare provider must be delivered at least two calendar days before Medicare covered services end. The provider must ensure that the beneficiary or their representative signs and dates the NOMNC to demonstrate that the beneficiary or their representative received the notice and understands the termination of services can be disputed.<br><br>Review of the facility's list of residents discharged from a Medicare covered Part A stay with benefit days remaining in the past six months revealed that Resident # 234 did not have the form NOMNC CMS- signed by the beneficiary or their representative until 43 days after the last covered day of Part A service, confirming that the form was given and they understood the appeals process.<br><br>Interview with Licensed nursing staff, Employee [NAME] 8 on (MONTH) 7, (YEAR) at approximately 11:45 a.m. confirmed that the facility did not find evidence that Resident # 234 or their representative recieved or signed the NOMNC CMS- notice in a timely manner.<br><br>28 Pa Code 201.18(b)(2) Management<br><br>Previously cited<br><br>28 Pa Code 201.18(e)(1) Management<br><br>Previously cited 5/9/2017 |

Any deficiency statement ending with an asterisk (*) denotes a deficiency which the institution may be excused from correcting providing it is determined that other safeguards provide sufficient protection to the patients. (See instructions.) Except for nursing homes, the findings stated above are disclosable 90 days following the date of survey whether or not a plan of correction is provided. For nursing homes, the above findings and plans of correction are disclosable 14 days following the date these documents are made available to the facility. If deficiencies are cited, an approved plan of correction is requisite to continued program participation.

| LABORATORY DIRECTOR'S OR PROVIDER/SUPPLIER REPRESENTATIVE'S SIGNATURE | TITLE | (X6) DATE |
|---|---|---|

FORM CMS-2567 (02/99)
Previous Versions Obsolete

Event ID:

Facility ID:
395384

If continuation sheet
Page 1 of   11

**Department of Health & Human Services**
**Centers for Medicare & Medicaid Services**

Printed: 08/05/2021
Form Approved OMB
No. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 395384 | (X2) MULTIPLE CONSTRUCTION  A. Building  B. Wing | (X3) DATE SURVEY COMPLETED 06/07/2018 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER  Pocopson Home | STREET ADDRESS, CITY, STATE, ZIP CODE  1695 Lenape Road  West Chester, PA 19382 |
|---|---|

For information on the nursing home's plan to correct this deficiency, please contact the nursing home or the state survey agency.

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (Each deficiency must be preceded by full regulatory or LSC identifying information) |
|---|---|
| F 0584  Level of Harm - Minimal harm or potential for actual harm  Residents Affected - Some | Honor the resident's right to a safe, clean, comfortable and homelike environment, including but not limited to receiving treatment and supports for daily living safely.  Based on observations of the meal service, it was determined that the facility did not ensure a home-like environment for the residents on three out of seven nursing units. (One West, Two West and 5 [NAME]).  Findings include:  Observations of the delivery of meals on the one west dining room on (MONTH) 4, (YEAR) at approximately 1:15 p.m. and 5:30 p.m., (MONTH) 5, (YEAR) at 1:20 p.m. and (MONTH) 6, (YEAR) at 1:25 p.m., revealed that meals were being delivered on trays to the residents. The food items not removed from the trays. All food items remained on the trays for the duration of the meals.  Observation of the meals served on (MONTH) 4, (YEAR) at approximately 12:30 pm and again on (MONTH) 5, (YEAR) at approximately 12:40 p.m. on 2 West for lunch meals were being delivered on trays to the residents. The food items not removed from the trays. All food items remained on the trays for the duration of the meals.  Observation of the meal served on (MONTH) 7, (YEAR) at approximately 12:45 p.m. on 5[NAME]revealed that meals were being delivered on trays to the residents. The food items not removed from the trays and all items remained on the trays for the duration of the meal.  An interview was conducted on (MONTH) 7, (YEAR), with the Director of Nursing and the Nursing Home Administrator at 1:30 p.m. revealed that eating on trays for meals was not home-like.  28 Pa. Code 201.18(a)(b)(3)(e)(1) Management  28 Pa. Code 201.29(a)(j) Resident rights |

FORM CMS-2567 (02/99)
Previous Versions Obsolete

Event ID:

Facility ID:
395384

If continuation sheet
Page 2 of 11

**Department of Health & Human Services**
**Centers for Medicare & Medicaid Services**

Printed: 08/05/2021
Form Approved OMB
No. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:

395384 | (X2) MULTIPLE CONSTRUCTION

A. Building
B. Wing | (X3) DATE SURVEY COMPLETED

06/07/2018 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER

Pocopson Home | STREET ADDRESS, CITY, STATE, ZIP CODE
1695 Lenape Road
West Chester, PA 19382 |
|---|---|

For information on the nursing home's plan to correct this deficiency, please contact the nursing home or the state survey agency.

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES
(Each deficiency must be preceded by full regulatory or LSC identifying information) |
|---|---|
| F 0677

Level of Harm - Minimal harm or potential for actual harm

Residents Affected - Few | Provide care and assistance to perform activities of daily living for any resident who is unable.

**NOTE- TERMS IN BRACKETS HAVE BEEN EDITED TO PROTECT CONFIDENTIALITY**

Based on observation, clinical record review and staff interview, it was determined that the facility failed to provide necessary services to maintain personal hygiene for one of three residents reviewed. (Resident #157)

Findings include:

Review of Resident #157's clinical record revealed a [DIAGNOSES REDACTED]. Further review Resident #157's Minimum Data Set (MDS- periodic assessment of resident care needs) completed on (MONTH) 24, (YEAR), revealed Resident 157 was an extensive assist of two for personal hygiene.

Observation on (MONTH) 1, (YEAR) at approximately 10:45 a.m. revealed the resident seated in the bed room with fingernails that were long and visibly soiled. Further observation on (MONTH) 7, (YEAR) at approximately 1:29 p.m. revealed the resident in the bed room with fingernails that were long and visibly soiled.

Review of documentation for nursing assistants and the personal hygiene tasks for Resident #157, revealed that the resident was given a shower on (MONTH) 6, (YEAR) and nail care was not. There was no further documentation that the resident had refused this task.

Interview with the Nursing Home Administrator on (MONTH) 7, (YEAR) at approximately 12:25 p.m. confirmed that Resident #157's nails were long and soiled and should have been clipped and cleaned on each shower/bath day.

28 Pa. Code 211.5(f) Clinical records

Previously cited: 7/24/2017

28 Pa. Code 211.12(d)(1)(5) Nursing services

Previously cited: 7/24/2017 |

FORM CMS-2567 (02/99)
Previous Versions Obsolete

Event ID:

Facility ID:
395384

If continuation sheet
Page 3 of 11

**Department of Health & Human Services**
**Centers for Medicare & Medicaid Services**

Printed: 08/05/2021
Form Approved OMB
No. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>395384 | (X2) MULTIPLE CONSTRUCTION<br><br>A. Building<br>B. Wing | (X3) DATE SURVEY COMPLETED<br><br>06/07/2018 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>Pocopson Home | STREET ADDRESS, CITY, STATE, ZIP CODE<br>1695 Lenape Road<br>West Chester, PA 19382 |
|---|---|

For information on the nursing home's plan to correct this deficiency, please contact the nursing home or the state survey agency.

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES<br>(Each deficiency must be preceded by full regulatory or LSC identifying information) |
|---|---|
| F 0684<br><br>Level of Harm - Minimal harm or potential for actual harm<br><br>Residents Affected - Few | Provide appropriate treatment and care according to orders, residents preferences and goals.<br><br>**NOTE- TERMS IN BRACKETS HAVE BEEN EDITED TO PROTECT CONFIDENTIALITY**<br><br>Based on clinical record review and staff interview, it was determined the facility failed follow physcian's orders that corresponded with the resident wishes for end of life care for one of 35 residents reviewed (Resident #254).<br><br>Findings include:<br><br>Review of Resident #254's clinical record revealed the resident was admitted to the facility on (MONTH) 21, (YEAR) with a [DIAGNOSES REDACTED].<br><br>Review of Resident #254's physician's orders [REDACTED].<br><br>Review of Resident #254's progress notes revealed a nurse's note on (MONTH) 22, (YEAR) stating that at 4:30 p.m., the resident fell , vomited dark brown emesis, and became unresponsive with no pulse or respirations. Staff initiated cardiopulmonary resuscitation (CPR) using an automated external defibrillator and called 911 (Emergency medical services). Paramedics arrived and took over CPR until the resident was pronounced dead at 5:14 p.m.<br><br>The facilty failed to followed Resident #254's physician's orders [REDACTED].<br><br>The facility's failure to follow Resident #254's Advanced Directive and physician's orders [REDACTED].<br><br>28 Pa. Code: 201.18 (b)(1) Management.<br><br>28 Pa. Code: 201.29 (i) Resident rights.<br><br>28 Pa. Code: 211.5 (f) Clinical records. |

FORM CMS-2567 (02/99)
Previous Versions Obsolete

Event ID:

Facility ID:
395384

If continuation sheet
Page 4 of 11

**Department of Health & Human Services**
**Centers for Medicare & Medicaid Services**

Printed: 08/05/2021
Form Approved OMB
No. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>395384 | (X2) MULTIPLE CONSTRUCTION<br><br>A. Building<br>B. Wing | (X3) DATE SURVEY COMPLETED<br><br>06/07/2018 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>Pocopson Home | STREET ADDRESS, CITY, STATE, ZIP CODE<br>1695 Lenape Road<br>West Chester, PA 19382 |
|---|---|

For information on the nursing home's plan to correct this deficiency, please contact the nursing home or the state survey agency.

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES<br>(Each deficiency must be preceded by full regulatory or LSC identifying information) |
|---|---|
| F 0689<br><br>Level of Harm - Minimal harm or potential for actual harm<br><br>Residents Affected - Few | Ensure that a nursing home area is free from accident hazards and provides adequate supervision to prevent accidents.<br><br>**NOTE- TERMS IN BRACKETS HAVE BEEN EDITED TO PROTECT CONFIDENTIALITY**<br><br>Based on clinical record review and staff interview, it was determined that the facility failed to ensure residents were free of accident hazards and had adequate supervision for two of 35 residents reviewed. (Residents #23 and #224)<br><br>Findings include:<br><br>Review of Resident #23's [DIAGNOSES REDACTED].<br><br>Review of Resident #23's Quarterly Minimum Data Set (MDS - periodic assessment of resident needs) dated (MONTH) 6, (YEAR) revealed that Resident #23 required total dependence of one staff member for locomotion on the resident's unit.<br><br>Review of Resident #23's nursing progress notes dated (MONTH) 30, (YEAR) revealed Resident grimacing and saying 'ouch' when applying pressure to heel/ankle area. Continues with PROM (passive range of motion) to right lower extremity. Unable to perform ROM (range of motion) to ankle/foot r/t pain. Followed up with resident. Resident currently resting in bed with no further s/s of pain or discomfort.<br><br>Further review of Resident #23's nursing progress notes dated (MONTH) 30, (YEAR) revealed Mobilex x-ray results of right ankle received tonight. Positive for acute fractures of the distal tibia and fibula (bones located in the lower leg).<br><br>Review of ankle x-ray results dated (MONTH) 30, (YEAR) revealed acute fractures of the distal tibia and fibula shafts.<br><br>Review of documentation provided by the facility dated (MONTH) 30, (YEAR) revealed unknown origin investigation started. Spoke with staff and made aware that resident has footrests on scoot chair that are used, per staff resident at times has feet sliding off the back of footrests. OT (occupational therapy) eval (evaluation) entered for possible cushion or device to prevent this from occurring.<br><br>Further review of documentation provided by the facility dated (MONTH) 30, (YEAR) revealed can recall two separate occasions that (NA- nursing assisant) was pushing resident in scoot chair from lobby to room, resident said 'ouch'.<br><br>Further review of documentation provided by the facility dated (MONTH) 31, (YEAR) revealed Resident's feet slide back off her foot rests during transport, can't recall any specific injury related to this occurring though.<br><br>Review of Resident #23's comprehensive care plan for ADL (activities of daily living) Functional/Rehab Potential revealed that staff are to ascertain repositioning when in bed or out of bed in wheelchair/scoot chair or stationary chair.<br><br>(continued on next page) |

FORM CMS-2567 (02/99)
Previous Versions Obsolete

Event ID:

Facility ID:
395384

If continuation sheet
Page 5 of 11

**Department of Health & Human Services**
**Centers for Medicare & Medicaid Services**

Printed: 08/05/2021
Form Approved OMB
No. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 395384 | (X2) MULTIPLE CONSTRUCTION<br>A. Building<br>B. Wing | (X3) DATE SURVEY COMPLETED 06/07/2018 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br>Pocopson Home | STREET ADDRESS, CITY, STATE, ZIP CODE<br>1695 Lenape Road<br>West Chester, PA 19382 |
|---|---|

For information on the nursing home's plan to correct this deficiency, please contact the nursing home or the state survey agency.

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES<br>(Each deficiency must be preceded by full regulatory or LSC identifying information) |
|---|---|
| F 0689<br><br>Level of Harm - Minimal harm or potential for actual harm<br><br>Residents Affected - Few | The facility failed to provide adequate foot support on Resident #23's scoot chair to prevent Resident #23's feet from sliding off the chair during transport.<br><br>The above information was conveyed to the Director of Nursing on (MONTH) 7, (YEAR) at approximately 12:45 p.m.<br><br>Review of Resident #224's clinical record revealed [DIAGNOSES REDACTED]., personality changes, and impaired reasoning), and generalized anxiety disorder (excessive, ongoing anxiety and worry that interfere with day-to-day activities.)<br><br>Review of Resident #224's Quarterly MDS's for (MONTH) 29, (YEAR) and (MONTH) 17, (YEAR) both revealed that the resident had severe cognitive impairment.<br><br>Review of Resident #224's progress notes revealed a social worker note on (MONTH) 25, (YEAR) stating Resident observed biting and pulling pants, creating holes in the lower half of the pant legs.<br><br>Review of Resident #224's progress notes revealed a nursing note on (MONTH) 11, (YEAR) stating Resident was observed coughing and with clear sputum on her shirt and around her mouth, pieces of material were noted to be missing from resident's shirt, this nurse during assessment observed a small approximately 3 cm x 5cm (centimeter) piece of material from resident's shirt in the resident's mouth this nurse did a sweep of the resident's mouth and retrieved the piece of material.<br><br>Review of Resident #224's progress notes revealed a nursing note on (MONTH) 14, (YEAR) at 6:17 AM stating Resident found on last rounds chewing on nightgown. Nightgown noted to be torn, however, no fabric was in resident's mouth. Another nurse's note at 7:14 p.m. stated Resident observed chewing on the front of her shirt.<br><br>Review of Resident #224's plan of care for biting her clothing, initiated (MONTH) 15, (YEAR), revealed the following interventions: dress the resident in tighter fitting clothing, redirection, be consistent with routine/activities, and provide snacks. There were no interventions related to supervising the resident.<br><br>Review of Resident #224's progress notes revealed a nursing note on (MONTH) 30, (YEAR) stating resident was chewing her shirt. Finger swiped resident's mouth, removed multiple pieces of shirt - 100% cotton. Shirt changed. Resident appeared to be attempting to clear throat but couldn't .Resident gagging and attempting to clear throat. Still making noises .Still attempting to eat her shirt. At the time, the resident had a respiratory rate of 22 (normal is 12-18 breaths per minute) and a pulse ox (saturation of oxygen in the blood) of 88% (normal is 95-100%). The resident was sent to the hospital via 911 and evaluated for foreign body ingestion.<br><br>Review of Resident #224's progress notes revealed a nursing note on (MONTH) 31, (YEAR) which stated observed resident placing nightgown in her mouth, biting down with teeth clenched and pulling it with her hands. Review of Resident #224's progress notes revealed a nursing note on (MONTH) 5, (YEAR) stating Resident was biting at clothing this shift. Multiple pieces of cloth pulled from mouth.<br><br>Observation of Resident #224 on (MONTH) 4, (YEAR) from 3:00 to 3:10 p.m. revealed the resident alone in the 5 [NAME] activity lounge biting her shirt. The resident was observed unsupervised for approximately 10 minutes before a staff member came and took the resident to the bathroom.<br><br>(continued on next page) |

FORM CMS-2567 (02/99)
Previous Versions Obsolete

Event ID:

Facility ID:
395384

If continuation sheet
Page 6 of 11

**Department of Health & Human Services**
**Centers for Medicare & Medicaid Services**

Printed: 08/05/2021
Form Approved OMB
No. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 395384 | (X2) MULTIPLE CONSTRUCTION A. Building B. Wing | (X3) DATE SURVEY COMPLETED 06/07/2018 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER Pocopson Home | STREET ADDRESS, CITY, STATE, ZIP CODE 1695 Lenape Road West Chester, PA 19382 |
|---|---|

For information on the nursing home's plan to correct this deficiency, please contact the nursing home or the state survey agency.

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (Each deficiency must be preceded by full regulatory or LSC identifying information) |
|---|---|
| F 0689<br><br>Level of Harm - Minimal harm or potential for actual harm<br><br>Residents Affected - Few | The above was discussed and confirmed with the Nursing Home Administrator and Director of Nursing on (MONTH) 7, (YEAR) at 1:54 p.m<br><br>28 Pa. Code 201.18(b)(1) Management<br><br>Previously cited 07/24/17<br><br>28 Pa. Code 201.18(b)(3) Management<br><br>Previously cited 07/24/17<br><br>28 Pa. Code 201.18(e)(1) Management<br><br>Previously cited 07/24/17<br><br>28 Pa. Code 211.12(c) Nursing servicesPreviously cited 07/24/17<br><br>28 Pa. Code 211.12(d)(1)(5) Nursing services<br><br>Previously cited 07/24/17<br><br>28 Pa. Code 211.12(d)(3) Nursing services<br><br>Previously cited 07/24/17 |

FORM CMS-2567 (02/99)
Previous Versions Obsolete

Event ID:

Facility ID: 395384

If continuation sheet
Page 7 of 11

**Department of Health & Human Services**
**Centers for Medicare & Medicaid Services**

Printed: 08/05/2021
Form Approved OMB
No. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 395384 | (X2) MULTIPLE CONSTRUCTION A. Building B. Wing | (X3) DATE SURVEY COMPLETED 06/07/2018 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER Pocopson Home | STREET ADDRESS, CITY, STATE, ZIP CODE 1695 Lenape Road West Chester, PA 19382 |
|---|---|

For information on the nursing home's plan to correct this deficiency, please contact the nursing home or the state survey agency.

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (Each deficiency must be preceded by full regulatory or LSC identifying information) |
|---|---|
| F 0761<br><br>Level of Harm - Minimal harm or potential for actual harm<br><br>Residents Affected - Few | Ensure drugs and biologicals used in the facility are labeled in accordance with currently accepted professional principles; and all drugs and biologicals must be stored in locked compartments, separately locked, compartments for controlled drugs.<br><br>**NOTE- TERMS IN BRACKETS HAVE BEEN EDITED TO PROTECT CONFIDENTIALITY**<br><br>Based on observation, staff interview, and review of facility policy, it was determined that the facility failed to label medications after opening on one of eight medication rooms and one of nine medication carts. (3rd Floor [NAME])<br><br>Findings include:<br><br>Review of facility's policy titled, Administration Procedures for all Medication, dated (MONTH) 24, (YEAR), revealed that when opening a multi-dose container, place the date on the container.<br><br>Observations (MONTH) 4, (YEAR) at approximately 12:15 p.m. of one of eight medication rooms on 3rd Floor[NAME]revealed an open bottle of the anti-epileptic drug Neurotin 250 milligrams (mg) with no open date.<br><br>Observation of one of nine medication carts on 3rd Floor[NAME]on (MONTH) 4, (YEAR) at approximately 12:20 p.m. revealed an open bottle of the antibiotic [MEDICATION NAME] 25mg/ml with no opened date, an opened bottle of liquid Tylenol with no opened date, an opened bottle of Ranitidene 75mg with no opened date, and an opened bottle of Levetiracetam Solution with no open date.<br><br>Interview with licensed nursing staff, Employee, E3 on (MONTH) 4 at approximately 12:30 p.m. revealed that medication bottles need to be dated when opened.<br><br>The aforementioned findings were reported to and confirmed with the Administrator and the Director of Nursing on (MONTH) 7, (YEAR) at approximately 2:20 p.m.<br><br>28 Pa Code 211.9(a)(1) Pharmacy services<br><br>28 Pa Code 211.12(d)(1)(5) Nursing services<br><br>Previously cited: 7/24/2017 |

FORM CMS-2567 (02/99)
Previous Versions Obsolete

Event ID:

Facility ID:
395384

If continuation sheet
Page 8 of 11

**Department of Health & Human Services**
**Centers for Medicare & Medicaid Services**

Printed: 08/05/2021
Form Approved OMB
No. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER: 395384 | (X2) MULTIPLE CONSTRUCTION A. Building B. Wing | (X3) DATE SURVEY COMPLETED 06/07/2018 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER Pocopson Home | STREET ADDRESS, CITY, STATE, ZIP CODE 1695 Lenape Road West Chester, PA 19382 |
|---|---|

For information on the nursing home's plan to correct this deficiency, please contact the nursing home or the state survey agency.

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES (Each deficiency must be preceded by full regulatory or LSC identifying information) |
|---|---|
| F 0802<br><br>Level of Harm - Minimal harm or potential for actual harm<br><br>Residents Affected - Some | Provide sufficient support personnel to safely and effectively carry out the functions of the food and nutrition service.<br><br>Based on observation, review of facility policy and staff and group interview, it was determined that the facility failed to provide sufficient dining services staff to ensure that resident meals were served timely on one of seven nursing units (4th floor [NAME]).<br><br>Findings include:<br><br>During the group interview on (MONTH) 5, (YEAR), at approximately 2:00 p.m. it was revealed by two residents that the breakfast meals were served at 8:30 in the morning, which they believed was late.<br><br>Review of the facility policy revealed that the breakfast meal was scheduled to be served on 4th[NAME]t 7:58 a.m. with a plus or minus of 10 minutes.<br><br>Observation of the breakfast meals on (MONTH) 6, (YEAR) on 4the floor[NAME]revealed that the trays arrived on the unit at 8:21 a.m. a 13 minutes delay according to the facility policy.<br><br>Interview with Licensed Employee E10 on (MONTH) 6, (YEAR), at approximately 8:25 a.m. revealed that the floor was normally served at this time or later.<br><br>During an interview with Nursing Home Administrator (NHA) on (MONTH) 7, (YEAR), at 1:10 p.m. NHA revealed that residents should be served meals in accordance to their policy.<br><br>28 Pa Code 211.6(c) Dietary services.<br><br>28 Pa. Code 201.18(b)(6) Management |

FORM CMS-2567 (02/99)
Previous Versions Obsolete

Event ID:

Facility ID:
395384

If continuation sheet
Page 9 of 11

**Department of Health & Human Services**
**Centers for Medicare & Medicaid Services**

Printed: 08/05/2021
Form Approved OMB
No. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>395384 | (X2) MULTIPLE CONSTRUCTION<br><br>A. Building<br>B. Wing | (X3) DATE SURVEY COMPLETED<br><br>06/07/2018 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>Pocopson Home | STREET ADDRESS, CITY, STATE, ZIP CODE<br>1695 Lenape Road<br>West Chester, PA 19382 |
|---|---|

For information on the nursing home's plan to correct this deficiency, please contact the nursing home or the state survey agency.

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES<br>(Each deficiency must be preceded by full regulatory or LSC identifying information) |
|---|---|
| F 0812<br><br>Level of Harm - Minimal harm or potential for actual harm<br><br>Residents Affected - Some | Procure food from sources approved or considered satisfactory and store, prepare, distribute and serve food in accordance with professional standards.<br><br>Based on review of facility policy, observations and staff interview, it was determined that the facility failed to prepare food under sanitary conditions in the kitchen and in on one of 9 dining rooms. (One West)<br><br>Findings include:<br><br>Review of facility policy, Dress Code, policy effective date (MONTH) 20, (YEAR), revealed that dietary staff hair must be covered entirely by a hair net.<br><br>Observation on (MONTH) 4, (YEAR), at 12:00 p.m. during the initial tour in the kitchen revealed dietary staff, Employee E4 not wearing a beard guard while serving food.<br><br>Observation on (MONTH) 7, (YEAR), at 10:10 a.m. during a follow up tour in the kitchen revealed dietary staff, Employee E4, Employee E5, and Employee E6 not wearing a beard guard while preparing food and beverages.<br><br>Interview with Dietary Department Director, Employee E7 on (MONTH) 7, (YEAR) at 10:15 a.m. indicated that beard guards should be worn for facial hair.<br><br>Observations of the lunch meal on (MONTH) 5, (YEAR), at approximately 1:11 p.m. on One West revealed Employee E9 using her teeth to open a salad dressing packet.<br><br>Interview with the Nursing Home Administrator on (MONTH) 7, (YEAR) at approximately 1:15 p.m. revealed that it was not an acceptable practice.<br><br>28 Pa Code 201.18(b)(1)(e)(1) Management<br><br>Previously cited 5/9/2017<br><br>28 Pa Code 211.6(f) Dietary Services |

FORM CMS-2567 (02/99)
Previous Versions Obsolete

Event ID:

Facility ID:
395384

If continuation sheet
Page 10 of 11

**Department of Health & Human Services**
**Centers for Medicare & Medicaid Services**

Printed: 08/05/2021
Form Approved OMB
No. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:  395384 | (X2) MULTIPLE CONSTRUCTION  A. Building  B. Wing | (X3) DATE SURVEY COMPLETED  06/07/2018 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER  Pocopson Home | STREET ADDRESS, CITY, STATE, ZIP CODE  1695 Lenape Road  West Chester, PA 19382 |
|---|---|

For information on the nursing home's plan to correct this deficiency, please contact the nursing home or the state survey agency.

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES  (Each deficiency must be preceded by full regulatory or LSC identifying information) |
|---|---|
| F 0880  Level of Harm - Minimal harm or potential for actual harm  Residents Affected - Few | Provide and implement an infection prevention and control program.  Based on observation, staff interview and review of facility policy, it was determined that the facility failed to use proper infection control techniques when utilizing a urinary drainage bag for two of four residents reviewed. (Resident #85 and Resident #135)  Findings include:  Review of facility policy titled, Emptying Urinary Drainage Bag dated (MONTH) (YEAR), procedure step number 6, states ensure drainage bag does not touch floor.  Observation conducted on (MONTH) 5, (YEAR) at approximately 9:23 a.m. on West 2, revealed Resident #85 sitting on the edge of bed with feet on the ground eating breakfast while the urinary drainage bag was seen lying on the floor under the bed. Observation of (MONTH) 6, (YEAR) at approximately 7:00 a.m. on West 2, revealed Resident #85 was sleeping in bed and urinary drainage bag was lying on floor next to the bed.  Observation on (MONTH) 5, (YEAR) at approximately 10:12 a.m. on West 1 revealed Resident #135 was sleeping in bed and urinary drainage bag was on the floor next to the bed.  The aforementioned findings were reported to and confirmed with the Administrator and the Director of Nursing on (MONTH) 7, (YEAR) at approximately 1:55 p.m.  28 Pa Code 211.12(d)(1)(5) Nursing services  Previously cited: 7/24/2017 |

FORM CMS-2567 (02/99)
Previous Versions Obsolete

Event ID:

Facility ID:
395384

If continuation sheet
Page 11 of 11

**Department of Health & Human Services**
**Centers for Medicare & Medicaid Services**

Printed: 08/05/2021
Form Approved OMB
No. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>395384 | (X2) MULTIPLE CONSTRUCTION<br><br>A. Building<br>B. Wing | (X3) DATE SURVEY COMPLETED<br><br>07/18/2019 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>Pocopson Home | STREET ADDRESS, CITY, STATE, ZIP CODE<br>1695 Lenape Road<br>West Chester, PA 19382 |
|---|---|

For information on the nursing home's plan to correct this deficiency, please contact the nursing home or the state survey agency.

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES<br>(Each deficiency must be preceded by full regulatory or LSC identifying information) |
|---|---|
| F 0622<br><br>Level of Harm - Minimal harm or potential for actual harm<br><br>Residents Affected - Few | Not transfer or discharge a resident without an adequate reason; and must provide documentation and convey specific information  when a resident is transferred or discharged.<br><br>**NOTE- TERMS IN BRACKETS HAVE BEEN EDITED TO PROTECT CONFIDENTIALITY**<br><br>Based on clinical record review, it was determined that the facility failed to send all appropriate clinical documentation for residents transferred to acute care facilities for three of three residents reviewed (Resident #31, Resident #145, and Resident #165).<br><br>Findings Include:<br><br>Review of Resident #31's progress note dated (MONTH) 29,2019 indicated that Resident #31 was hospitalized following a fall and diagnosed with [REDACTED].<br><br>Further review of Resident #31's clinical record revealed no evidence that all appropriate documentation was sent to the acute care facility.<br><br>Review of Resident #145's progress notes indicated Resident #145 was hospitalized (MONTH) 22, 2019 for scheduled surgery to remove lower extremity.<br><br>Further review of Resident #145's clinical record revealed no evidence that all appropriate documentation was sent to the acute care facility.<br><br>Review of Resident #165's progress notes indicated Resident #165 was sent to the hospital on (MONTH) 21, 2019 for signs/symptoms of Hypertension (elevated blood pressure).<br><br>Continued review of Resident #165's progress notes revealed a note dated (MONTH) 2, 2019 indicated that the physician ordered Resident #165 be sent to the emergency room for evaluation and was admitted with a [DIAGNOSES REDACTED].<br><br>Further review of Resident #165's clinical record revealed no evidence that all appropriate documentation was sent to the acute care facility.<br><br>Interview occurred on (MONTH) 18, 2019 at approximately 12:18 p.m. with the Nursing Home Administrator when information regarding appropriate clinical documentation not sent to acute care facilities with residents was presented.<br><br>28 PA Code 201.18(b)(1)(2) Management<br><br>(continued on next page) |

Any deficiency statement ending with an asterisk (*) denotes a deficiency which the institution may be excused from correcting providing it is determined that other safeguards provide sufficient protection to the patients. (See instructions.) Except for nursing homes, the findings stated above are disclosable 90 days following the date of survey whether or not a plan of correction is provided. For nursing homes, the above findings and plans of correction are disclosable 14 days following the date these documents are made available to the facility. If deficiencies are cited, an approved plan of correction is requisite to continued program participation.

| LABORATORY DIRECTOR'S OR PROVIDER/SUPPLIER REPRESENTATIVE'S SIGNATURE | TITLE | (X6) DATE |
|---|---|---|

FORM CMS-2567 (02/99)
Previous Versions Obsolete

Event ID:

Facility ID:
395384

If continuation sheet
Page 1 of   4

**Department of Health & Human Services**
**Centers for Medicare & Medicaid Services**

Printed:  08/05/2021
Form Approved OMB
No. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:  395384 | (X2) MULTIPLE CONSTRUCTION  A. Building  B. Wing | (X3) DATE SURVEY COMPLETED  07/18/2019 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER  Pocopson Home | STREET ADDRESS, CITY, STATE, ZIP CODE  1695 Lenape Road  West Chester, PA 19382 |
|---|---|

For information on the nursing home's plan to correct this deficiency, please contact the nursing home or the state survey agency.

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES  (Each deficiency must be preceded by full regulatory or LSC identifying information) |
|---|---|
| F 0622  Level of Harm - Minimal harm or potential for actual harm  Residents Affected - Few | Previously cited on 06/07/18 |

FORM CMS-2567 (02/99)
Previous Versions Obsolete

Event ID:

Facility ID:  395384

If continuation sheet
Page 2 of 4

**Department of Health & Human Services**
**Centers for Medicare & Medicaid Services**

Printed: 08/05/2021
Form Approved OMB
No. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>395384 | (X2) MULTIPLE CONSTRUCTION<br><br>A. Building<br>B. Wing | (X3) DATE SURVEY COMPLETED<br><br>07/18/2019 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>Pocopson Home | STREET ADDRESS, CITY, STATE, ZIP CODE<br>1695 Lenape Road<br>West Chester, PA 19382 |
|---|---|

For information on the nursing home's plan to correct this deficiency, please contact the nursing home or the state survey agency.

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES<br>(Each deficiency must be preceded by full regulatory or LSC identifying information) |
|---|---|
| F 0689<br><br>Level of Harm - Minimal harm or potential for actual harm<br><br>Residents Affected - Few | Ensure that a nursing home area is free from accident hazards and provides adequate supervision to prevent accidents.<br><br>**NOTE- TERMS IN BRACKETS HAVE BEEN EDITED TO PROTECT CONFIDENTIALITY**<br><br>Based on clinical record review, policy review, and interviews with the staff, it was determined that the facility failed to ensure the safety of the residents by providing proper supervision from hazards for two out of 40 residents (Resident #69 and Resident #237).<br><br>Findings include:<br><br>Review of Resident #69's Quarterly Minimum Data Set (resident assessment tool) dated on (MONTH) 2, 2019, section C (Cognitive Patterns) revealed a three out of fifteen (severe impairment) on her Brief Interview for Mental Status (BIMS).<br><br>Further review of Resident #69's clinical record revealed a nursing note dated (MONTH) 27, 2019, stating that a possible ingestion of Derma[NAME] Soap occurred. Review of the incident report dated this same date stated that Resident was found sitting in the front lobby chair with 60oz cup full of Derma[NAME] Skin and Hair cleaner from her bedside table. Resident #69 offered the cup to the supervisor on the unit and stated that it taste horrible.<br><br>An interview conducted with the Nursing Home Administrator on (MONTH) 18, 2019, at approximately 9:20 a.m. revealed that the soap should have been returned to the caddy and locked at the nurse's station.<br><br>Review of the facility policy dated (MONTH) (YEAR) and labeled Resident Smoking, revealed that the interdisciplinary team will review the smoking assessment on a quarterly basis or with any change in a resident's condition that may affect the ability to smoke safely.<br><br>Review of Resident #237's clinical record revealed a [DIAGNOSES REDACTED].<br><br>Review of Resident #237's clinical record revealed a nursing note dated (MONTH) 26, 2019, stating that unsafe smoking was observed by the activity staff. Staff removed a cigarette butt from her mouth and now is deemed unsafe in handling cigarettes and smoking privileges have been taken away.<br><br>Further review of Resident #237's clinical record revealed the last smoking assessment prior to (MONTH) 26, 2019 was completed on (MONTH) 25, (YEAR) (22 months ago).<br><br>An interview with Employee E3 conducted on (MONTH) 18, 2019 at approximately 10:25 a.m. revealed that there were seven to eight residents that she was supervising at the time that this incident occurred. Employee E3 states that Resident #237 was smoking a cigarette and later the resident was chewing on something and could not find the finished cigarette. When Resident #237 was asked what she was chewing on, the cigarette butt was found in the resident's mouth. Employee E3 removed the cigarette butt and threw it away. Resident #237 was given a second cigarette and the cigarette butt was not found after the cigarette was completed. Employee E3 did not know if the resident ate the cigarette butt and reported this event to the charge nurse and supervisor.<br><br>(continued on next page) |

FORM CMS-2567 (02/99)
Previous Versions Obsolete

Event ID:

Facility ID:
395384

If continuation sheet
Page 3 of 4

**Department of Health & Human Services**
**Centers for Medicare & Medicaid Services**

Printed: 08/05/2021
Form Approved OMB
No. 0938-0391

| STATEMENT OF DEFICIENCIES AND PLAN OF CORRECTION | (X1) PROVIDER/SUPPLIER/CLIA IDENTIFICATION NUMBER:<br><br>395384 | (X2) MULTIPLE CONSTRUCTION<br><br>A. Building<br>B. Wing | (X3) DATE SURVEY COMPLETED<br><br>07/18/2019 |
|---|---|---|---|

| NAME OF PROVIDER OR SUPPLIER<br><br>Pocopson Home | STREET ADDRESS, CITY, STATE, ZIP CODE<br>1695 Lenape Road<br>West Chester, PA 19382 |
|---|---|

For information on the nursing home's plan to correct this deficiency, please contact the nursing home or the state survey agency.

| (X4) ID PREFIX TAG | SUMMARY STATEMENT OF DEFICIENCIES<br>(Each deficiency must be preceded by full regulatory or LSC identifying information) |
|---|---|
| F 0689<br><br>Level of Harm - Minimal harm or potential for actual harm<br><br>Residents Affected - Few | An interview was conducted with the Nursing Home Administrator on (MONTH) 18, 2019 at approximately 11:15 a.m. and stated that smoking assessments should have been completed more often for Resident #237.<br><br>The facility failed to ensure the safety of the residents by providing proper supervision from hazards for Resident #69 and Resident # 237.<br><br>F689 483.25(d) Accidents<br><br>Previously cited 6/7/2018<br><br>28 PA Code 211.10(d) Resident Care Policies<br><br>28 PA Code 211.12(c)(d)(1)(3)(5) Nursing Services<br><br>Previously cited 6/7/2017 |

FORM CMS-2567 (02/99)
Previous Versions Obsolete

Event ID:

Facility ID:
395384

If continuation sheet
Page  4  of  4