IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BARBARA TAMMARO, AS | : | |
| ADMINISTRATRIX OF THE ESTATE | : | |
| OF JULIANNE KEHLER, | : | CIVIL ACTION |
| | : | NO. 21-3811 |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| COUNTY OF CHESTER, | : | |
| POCOPSON HOME, | : | |
| | : | |
| Defendant. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                    February 16, 2022

## I.   INTRODUCTION

This is a wrongful death and survival action brought under 42 U.S.C. § 1983 alleging violations of the Federal Nursing Home Reform Act ("FNHRA").[1]

Defendant has moved to dismiss the Amended Complaint on the grounds that Plaintiff has not adequately pled claims under § 1983. As set forth below, Plaintiff has adequately pled § 1983 claims under a failure-to-train theory. However, she has not adequately pled § 1983 claims based on a theory of intentional understaffing of Defendant's facility. Therefore, the motion to dismiss will be granted in part and denied in part, such that

---

[1]    The Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331, as Plaintiff brings § 1983 claims based on Defendant's alleged violations of the FNHRA.

Plaintiff may pursue her § 1983 claims under a failure to train theory but not under an inadequate staffing theory.

Defendant alternatively moves to strike from the Amended Complaint all allegations of "reckless, wanton, willful, and outrageous conduct" on the grounds that Plaintiff has not pled any basis for punitive damages. Because the Court finds that Plaintiff has adequately pled a basis for punitive damages at this stage, this request to strike will be denied.

## II.    BACKGROUND[2]

Defendant Pocopson Home ("Pocopson Home" or "Defendant") is a nursing facility owned and operated by Chester County, Pennsylvania. Julianne Kehler was a dementia patient who was a resident of Pocopson Home from January 18, 2018 through February 4, 2020. Barbara Tammaro is the Administratrix of Ms. Kehler's Estate and is the plaintiff in this action.

During her time at Pocopson Home, Ms. Kehler was dependent upon the staff at Pocopson Home for her physical, mental, and medical needs, and required total assistance with daily activities. Due to her medical needs, Ms. Kehler was on a pureed diet at the time she was admitted to the facility. The Amended Complaint alleges that during her time at Pocopson Home, Ms.

---

[2]    The facts stated herein are taken from the Amended Complaint and are accepted as true and viewed in the light most favorable to Plaintiff, the non-moving party. See DeBenedictis v. Merrill Lynch & Co., 492 F.3d 209, 215 (3d Cir. 2007) (quoting Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989)).

Kehler was "frequently found pocketing food" and "vomiting undigested food" as a result of nursing staff's failure to adequately supervise her. Am. Compl. ¶ 45, ECF No. 14. Plaintiff further alleges that Ms. Kehler's care plan was "inadequate, inaccurate and/or incomplete" and did not adequately address her food-related risks. Id. at ¶¶ 69-70.

On February 4, 2020, Ms. Kehler was found unresponsive and later declared dead after several attempts to revive her. It was later determined that she had choked on a sandwich. The Amended Complaint alleges that Ms. Kehler's death was a direct result of the negligence, carelessness, recklessness, and wanton care provided by Pocopson Home, including its failures to implement or follow an adequate care plan and to adequately supervise her while she ate.

Plaintiff filed her initial complaint on August 26, 2021. The original complaint alleged both state negligence claims and claims under 42 U.S.C. § 1983 for violations of FNHRA. After Defendant moved to dismiss, the Court dismissed the state law claims with prejudice and the § 1983 claims without prejudice and with leave to amend. With respect to Plaintiff's § 1983 claims, the Court found that Plaintiff had failed to identify any official with final policymaking authority and had also failed to allege any custom or policy that caused Ms. Kehler's injury, as is required to impose municipal liability under §

3

1983. See Order on Mot. Dismiss, ECF No. 13; Monell v. Dept. of
Social Servs., 436 U.S. 658, 691 (1978).

On December 23, 2021, Plaintiff filed her Amended
Complaint, which again brings wrongful death and survival claims
under § 1983. The Amended Complaint identifies the Chester
County Commissioners as the relevant policymakers. And in
support of Plaintiff's claim that Defendant's actions were
undertaken as part of a custom or policy, the Amended Complaint
attaches as an exhibit a number of Pennsylvania Department of
Health ("DOH") surveys containing citations Defendant received
for various violations of the FNHRA.

Defendant again moved to dismiss. Plaintiff filed a timely
response and the Court held a hearing on the record, so the
motion is now ripe for review.

## III.  LEGAL STANDARD

A party may move to dismiss a complaint for failure to
state a claim upon which relief can be granted. Fed. R. Civ. P.
12(b)(6). When considering such a motion, the Court must "accept
as true all allegations in the complaint and all reasonable
inferences that can be drawn therefrom, and view them in the
light most favorable to the non-moving party." DeBenedictis v.
Merrill Lynch & Co., 492 F.3d 209, 215 (3d Cir. 2007) (quoting
Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir.
1989)).

To withstand a motion to dismiss, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). This "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. Although a plaintiff is entitled to all reasonable inferences from the facts alleged, a plaintiff's legal conclusions are not entitled to deference, and the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

The pleadings must contain sufficient factual allegations so as to state a facially plausible claim for relief. See, e.g., Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). In deciding a Rule 12(b)(6) motion, the Court limits its inquiry to the facts alleged in the complaint and its attachments, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon these documents. See Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994); Pension Benefit

Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196
(3d Cir. 1993).

IV.   **DISCUSSION**

Section 1983 serves as "a vehicle for imposing liability
against anyone who, under color of state law, deprives a person
of 'rights, privileges, or immunities secured by the
Constitution and laws.'" Grammer v. John J. Kane Reg'l Ctrs.-
Glen Hazel, 570 F.3d 520, 525 (3d Cir. 2009) (quoting Maine v.
Thiboutot, 448 U.S. 1, 4-6 (1980). But "a municipality cannot be
held liable solely because it employs a tortfeasor—or, in other
words, a municipality cannot be held liable under § 1983 on a
respondeat superior theory." Monell v. Dep't of Social Servs.,
436 U.S. 658, 691 (1978) (emphasis in original). A municipality
may only be held liable under § 1983 if the violation of the
plaintiff's rights was caused by action taken pursuant to a
municipal policy or custom. See Natale v. Camden Cnty. Corr.
Facility, 318 F.3d 575, 583-84 (3d Cir. 2003).

"There are three situations where acts of a government
employee may be deemed to be the result of a policy or custom of
the governmental entity for whom the employee works, thereby
rendering the entity liable under § 1983." Id. at 584. "The
first is where 'the appropriate officer or entity promulgates a
generally applicable statement of policy and the subsequent act
complained of is simply an implementation of that policy.'" Id.

6

at 584 (quoting <u>Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown</u>, 520 U.S. 397, 417 (1997) (Souter, J., dissenting)). Second, a policy or customer may be inferred where "no rule has been announced as policy but federal law has been violated by an act of the policymaker itself." <u>Id.</u> (citing <u>Bryan Cnty.</u>, 520 U.S. at 417). Finally, a policy or custom may be inferred where "the policymaker has failed to act affirmatively at all," but "the need to take some action or control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need." <u>Id.</u> (citing <u>Bryan Cnty.</u>, 520 U.S. at 417) (internal quotation marks omitted).

Only the third "deliberate indifference" theory of liability is applicable here, as Plaintiff does not point to any statement of policy that Defendant followed or any specific act of the Chester County Commissioners themselves that caused Ms. Kehler's death. Pursuant to this theory, plaintiff argues that Defendant was deliberately indifferent in two principal ways: (1) through intentionally understaffing its facility; and (2) by failing to train and supervise its staff. Here, the Third Circuit's nonprecedential decision in <u>Robinson v. Fair Acres Geriatric Ctr.</u>, 722 Fed. Appx. 194 (3d Cir. 2018), and this Court's recent decision in <u>Ellis v. Delaware Cnty.</u>, No. 20-cv-

7

6175, 2021 WL 1614401 (E.D. Pa. Apr. 26, 2021), are instructive, as the plaintiffs in those cases advanced similar arguments.

    **a.  Intentional Understaffing**

Plaintiff concedes that no federal court has assessed liability under § 1983 for failing to hire an adequate number of staff. See generally Robinson, 722 Fed. Appx. at 199 (refusing to recognize a § 1983 claim based on understaffing in part because the plaintiff could not cite any cases in which a similar claim was recognized); Ellis, 2021 WL 1614401, at *4 (same). Nonetheless, Plaintiff asks the Court to use as persuasive authority two Pennsylvania state cases, Scampone v. Grane Healthcare Co., 11 A.3d 967 (Pa. Super. 2010), and Hall v. Episcopal Long Term Care, 54 A.3d 381 (Pa. Super. 2012), in which the Pennsylvania Superior Court awarded punitive damages for understaffing a nursing home under a corporate negligence theory.

But the standard for liability under § 1983 is not a negligence standard, and the Court declines to recognize a § 1983 understaffing claim for the first time on these facts. As such, Plaintiff's allegation that Defendant intentionally understaffed its facility is not a cognizable theory of liability for her § 1983 claim. The Court will therefore grant Defendant's motion as to this aspect of Plaintiff's claims, and

Plaintiff will not be permitted to proceed under a theory of intentional understaffing.

### b.   Failure to Train or Supervise

Plaintiff next alleges that Defendant exhibited deliberate indifference by failing to train its employees to adequately care for the residents at its facility. Among other training deficiencies, Plaintiff alleges that Defendant's employees were not trained to maintain and follow care plans for each resident as required by section 1396r(b)(2)(A) of the FNHRA. See 42 U.S.C. § 1396(r)(b)(2)(A).

To establish a claim for failure to train or supervise municipal employees, a plaintiff must show "that in light of the duties assigned to [the employees,] the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [municipality] can reasonably be said to have been deliberately indifferent to the need." City of Canton v. Harris, 489 U.S. 378, 390 (1989). This in turn requires a showing of the policymakers' "continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees." Bd. Of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 407 (1997). And finally, "for liability to attach in this circumstance the identified deficiency in a

[municipality's] training program must be closely related to the ultimate injury." Canton, 489 U.S. at 391.

The Amended Complaint, along with the attached DOH surveys, sufficiently states a failure-to-train claim. Plaintiff points at least three instances in which Defendant was issued citations for failing to adequately maintain and follow its residents' respective care plans, at least one of which was issued with a scope and severity rating of "E," which, according to the Amended Complaint, indicates that the deficiency was widespread throughout the facility. Am. Compl. ¶ 135, ECF No. 14. Defendant's repeated failure to maintain adequate care plans is the same training deficiency Plaintiff alleges caused Ms. Kehler's death. Taking the allegations of the Amended Complaint as true, Plaintiff has sufficiently established the Chester County Commissioners' "continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees." Bryan Cnty., 520 U.S. at 407. Here, as in Robinson and Ellis, "[t]he alleged inadequacy of staff training 'can plausibly be inferred from [the plaintiff's] allegations regarding the number and character of deficiency citations issued to [Defendant]." Ellis, 2021 WL 1614401, at *5 (quoting Robinson, 722 Fed. Appx. at 199-200) (first alteration in original). The deficiency alleged in the training program is also closely related to the ultimate injury, as Plaintiff

plausibly alleges that improper care planning ultimately contributed to Ms. Kehler's choking on food to which she should not have had access.

Defendant argues that Plaintiff has not pled deliberate indifference because most of the DOH citations Defendant received came in situations that were factually different from the incident involving Ms. Kehler. Defendant misapprehends the concept of deliberate indifference; Defendant asks the Court to compare factual details of the <u>result</u> of each violation rather than the <u>type</u> of violation itself, but the question here is whether Defendant has demonstrated "a pattern of similar . . . violations by untrained employees." <u>Connick v. Thompson</u>, 563 U.S. 51, 62 (2011). In other words, a repeated failure to maintain and follow a care plan for each resident will produce different types of harm to each resident because the care plans necessarily differ, but the violation that caused the harm is the same in each case. Therefore, even though Plaintiff alleges only one other DOH citation that specifically involved a resident choking, she plausibly alleges a general pattern of failing to maintain care plans that is enough to show deliberate indifference at this stage.

c.   **Defendant's Motion to Strike Language Related to Punitive Damages**

Defendant's motion also argues that all allegations of "reckless, wanton, willful, and outrageous conduct" contained in the Complaint should be stricken because Plaintiff has failed to state a valid basis for punitive damages. Mot. at 5, ECF No. 15-1.

Punitive damages are available in an action under § 1983 "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Thomas v. City of Phila, 290 F. Supp. 3d 371, 388 (E.D. Pa. 2018) (quoting Smith v. Wade, 461 U.S. 30, 56 (1983)). Plaintiff's allegation of Defendant's repeated violations of the FNHRA, including for failing to maintain adequate care plans, are sufficient to support an inference that Defendant's conduct involved at least reckless or callous indifference to its residents' federally protected rights. Defendant's request to strike will therefore be denied.

V.   **CONCLUSION**

For the reasons stated above, Defendant's motion to dismiss will be granted in part and denied in part. Defendant's alternative request to strike will be denied.

An appropriate order follows.