```
          IN THE UNITED STATES DISTRICT COURT
       FOR THE EASTERN DISTRICT OF PENNSYLVANIA


BARBARA TAMMARO, AS THE        :   CIVIL ACTION
ADMINISTRATRIX OF THE ESTATE   :   NO. 21-3811
OF JULIANNE KEHLER,            :
                               :
          Plaintiff,           :
                               :
     v.                        :
                               :
COUNTY OF CHESTER, POCOPSON    :
HOME,                          :
                               :
          Defendant.           :
```

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                          March 31, 2023

## I.   INTRODUCTION

This is a wrongful death and survival action brought by Barbara Tammaro ("Plaintiff"), as administratrix of the Estate of Julianne Marie Kehler ("Decedent"), against Pocopson Home ("Defendant") under 42 U.S.C. § 1983 alleging violations of the Federal Nursing Home Reform Act ("FNHRA").

Before the Court is Plaintiff's Motion for Leave to Amend the Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(2).[1] See Pl.'s Pet. for Leave to Am. Compl., ECF

---

[1] Plaintiff styles the submission as a "petition." The correct description is that of a "motion." See Fed. R. Civ. P. 7(b)(1) ("A request for a court order must be made by motion.").

No. 35 [hereinafter "Pl.'s Mot."]. As explained below, Plaintiff's Motion will be denied.

## II. BACKGROUND

Decedent was a resident at Pocopson, a healthcare facility that offers long-term medical and nursing services to its residents, from January 18, 2018 through February 4, 2020. Plaintiff filed her Complaint against Pocopson on August 26, 2021, asserting claims under both federal and state law regarding Decedent's passing after choking on a sandwich. Defendant filed a motion to dismiss, which the Court granted in part. Plaintiff's state law claims were dismissed without leave to amend, and her federal claims were dismissed with leave to amend.[2]

Plaintiff in turn filed an Amended Complaint, which pleaded that "it is believed and therefore averred that the Defendant, was directed by and through its policymakers, the Chester County Commissioners." See Am. Compl. ¶ 13, ECF No. 14. Plaintiff further alleged that "the Defendant, and the Chester County

---

[2] In dismissing the § 1983 count, the Court found that: (1) Plaintiff attempted to plead a § 1983 claim under a "deliberate indifference" theory; (2) Plaintiff did not identify any final policymaker responsible for a policy or custom that caused Decedent's injuries; (3) Plaintiff's understaffing allegation was insufficient to support a § 1983 claim; and (4) Plaintiff's reference to criticisms in several inspection reports for deficiencies unrelated to the cause of Decedent's death did were insufficient to support a failure to train or supervise theory.

Commissioners, exercised ultimate authority over all budgets and had final approval over the allocation of resources for staffing, supplies, capital expenditures, and operations of Pocopson Home." Id. at ¶ 34. Defendant again moved to dismiss. The Court previously dismissed the intentional understaffing theory but did not dismiss Plaintiff's failure-to-train theory under § 1983. Tammaro v. Cnty. of Chester, Pocopson Home, 586 F. Supp. 3d 347, 352 (E.D. Pa. 2022).

Now, following depositions of Defendant's Nursing Home Administrator Jacqueline McKenna (hereinafter "NHA") and Director of Nursing Patricia Zimmerman (hereinafter "DON") during discovery, Plaintiff filed the Motion for Leave to Amend the Amended Complaint currently before the Court. The proposed Second Amended Complaint seeks to add Defendant's NHA and DON, in addition to the County Commissioners, as final policymakers. In support, Plaintiff attached to the motion the transcript of the depositions of the NHA and DON, which were not attached to the proposed Second Amended Complaint.

### III.  LEGAL STANDARD

A party may amend its pleading once as a matter of course within the time provided under the Federal Rules of Civil Procedure. Fed. R. Civ. P. 15(a)(1). All further amendments require the other party's consent or leave of the court, which the Court "should freely give . . . when justice so requires."

3

Fed. R. Civ. P. 15(a)(2). Of course, Rule 15's liberal standard for amendment is not boundless. "[A] district court has discretion to deny a request to amend if it is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." Hill v. City of Scranton, 411 F.3d 118, 134 (3d Cir. 2005).

"An amendment is futile if the amended complaint would not survive a motion to dismiss . . . ." Alvin v. Suzuki, 227 F.3d 107, 121 (3d Cir. 2000).[3] To survive a motion to dismiss, pleadings must contain sufficient factual allegations to state a facially plausible claim for relief. See, e.g., Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). In deciding a Rule 12(b)(6) motion, the Court limits its inquiry to the facts alleged in the complaint and its attachments, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon these documents. See Jordan

---

[3] The facts alleged by Plaintiff are accepted as true and viewed in the light most favorable to Plaintiff when determining if amendment is futile.

4

v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994); Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

**IV.   DISCUSSION**

Section 1983 serves as a "vehicle for imposing liability against anyone who, under color of state law, deprives a person of 'rights, privileges, or immunities secured by the Constitution and laws.'" Grammer v. John J. Kane Reg'l Centrs.-Glen Hazel, 570 F.3d 520, 525 (3d Cir. 2009) (quoting Maine v. Thiboutot, 448 U.S. 1, 4-6 (1980)). But "a municipality cannot be held liable under § 1983 on a respondeat superior theory." Monell v. Dep't of Social Servs., 436 U.S. 658, 691 (1978). A municipality may only be held liable under § 1983 if the violation of plaintiff's rights was caused by action taken pursuant to a municipal policy or custom. See Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 583-84 (3d Cir. 2003).

In undertaking a § 1983 analysis, a court is "task[ed]" with "identify[ing] those officials or government bodies who speak with final policymaking authority for the local government actor concerning the action alleged to have caused the particular constitutional or statutory violation at issue." McMillan v. Monroe Cty., 520 U.S. 781, 784-85 (1997) (internal quotation omitted); see also Andrews v. City of Philadelphia, 895 F.2d 1498, 1480 (3d Cir. 1990).

5

Both Plaintiff and Defendant mainly rely on deposition testimony from the NHA, DON, and Commissioner Kichline in support of their respective arguments. As aforesaid, the testimony of the NHA and DON are attached to Plaintiff's Motion but not attached to the proposed Second Amended Complaint. The testimony of Commissioner Kichline is attached to Plaintiff's Supplemental Reply in Support of the Motion, but again, is not attached to or referenced in the Proposed Second Amended Complaint.

Under the circumstances, the threshold issue is thus whether the Court may consider the deposition transcripts attached to Plaintiff's Motion (but not the proposed Second Amended Complaint) when determining if granting Plaintiff's Motion and allowing Plaintiff to file the proposed Second Amended Complaint would be futile. The answer is that the Court may not.

The Third Circuit has previously stated that a district court "correctly decline[s] to consider documents attached only to [a plaintiff's] motion for leave to file the [amended complaint] because they were not attached to the complaint, not matters of public record, or not undisputedly authentic documents upon which [plaintiff's] claims are based." Logan v. Bd. of Educ. of the Sch. Dist. of Pittsburgh, 742 F. Appx. 628, 632 (3d Cir. 2018) (citing Sands v. McCormick, 502 F.3d 263, 268

6

(3d Cir. 2007) and Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1197 (3d Cir. 1993)). Therefore, because the deposition testimony is not attached to the proposed Second Amended Complaint, not a matter of public record, and not an undisputedly authentic document upon which Plaintiff's claims are based, the Court declines to consider the deposition of the NHA, the DON, and Commissioner Kichline in evaluating the futility of the proposed Second Amended Complaint.

Deposition transcripts aside, the allegations in the proposed Second Amended Complaint are insufficient to state a claim that, as employees of a county-owned nursing home, the NHA and DON could be considered final policymakers for purposes of § 1983 liability.[4]

Defendant argues that allowing Plaintiff to file her proposed Second Amended Complaint would be futile for three reasons: (1) the proposed Second Amended Complaint does not plead that the Commissioners delegated policymaking power to the NHA and/or DON; (2) Plaintiff's contention that the NHA and/or DON are final policymakers is unsupported; and (3) Plaintiff does not argue that Pennsylvania law supports her contention that final policymaking power can be delegated to the NHA and/or

---

[4] Plaintiff does not suggest that the NHA and DON are personally liable under § 1983, only that they allegedly were municipal policymakers, and thus attempt to hold the NHA and DON liable under the Monell theory.

7

DON by the Commissioners. See Def's Resp. in Opp'n 9, ECF No. 38.

A subordinate official's decisions can only establish policy "if a municipal policymaker delegated power to the employee or ratified his decision." Kelly v. Borough of Carlisle, 622 F.3d 248, 245 (3d Cir. 2006) (citing LaVerdure v. County of Montgomery, 324 F.3d 123, 125 (3d Cir. 2003)). On the face of the proposed Second Amended Complaint, Plaintiff does not plead that the County Commissioners had the power to delegate policymaking authority over Pocopson to the NHA and/or the DON to make them, not the Commissioners, the final policymakers. Nor does the proposed Second Amended Complaint plead that Commissioners in fact did so.

Instead, the proposed Second Amended Complaint pleads that all three parties-- the NHA, the DON, and the County Commissioners-- had joint policymaking power. See Second Am. Compl. ¶¶ 13 (naming three policymakers);  31 (alleging all three had duty to ensure staff competency); 37 (alleging all three had "ultimate authority" over budgets, "allocations of resources," and "operations"); 39, 40, 41, 79, 80, 122, 130 (alleging all three had a duty to employ a sufficient number of staff); and 132, 133 (alleging all three were indifferent to the deficiencies referenced in the Department of Health surveys).

8

Even if this tripartite arrangement were in fact so, the NHA and DON cannot have displaced the County Commissioners as final policymakers for Pocopson unless the Commissioners had the power to delegate their total authority to make final policy to these employees, and in fact did delegate such authority. Indeed, the proposed Second Amended Complaint continues to allege, as in the Amended Complaint, to the contrary that the final policymakers were the Commissioners acting through "its authorized agents, including the NHA and DON, employees, servants, contractors, . . .". See id. at ¶¶ 33 (Commissioners "and its authorized agents, including the NHA and DON, employees, . . ." had a duty to comply with FNHRA); 38 (Commissioners "acting through" the NHA and DON oversaw standard of professional practice at Pocopson); 79 (only Commissioners made understaffing policy).

Even if the Second Amended Complaint properly alleges that the Commissioners delegated some policymaking functions to the NHA and DON, Plaintiff has not alleged that the NHA and DON made final, or unreviewable, policy as required under § 1983. Nor does an employee become a policymaker because he/she may have been delegated some managerial responsibilities. The proposed Second Amended Complaint confuses the delegation of some duties over some operations at Pocopson with the NHA and/or DON having

9

been cloaked with the unreviewable and final power by the County Commissioners to make policy decisions.

"[I]f a municipal employee's decision is subject to review, even discretionary review, it is not final and that employee is therefore not a policymaker for purposes of imposing municipal liability under § 1983." Brennan v. Norton, 350 F.3d 399, 428 (3d Cir. 2003); see also Hill v. Borough of Kutztown, 455 F.3d 225, 245 (3d Cir. 2006) ("In order to ascertain if an official has final policy-making authority, and can thus bind the municipality by his conduct, a court must determine (1) whether, as a matter of state law, the official is responsible for making policy in the particular area of municipal business in question, and (2) whether the official's authority to make policy in that area is final and unreviewable."); Kelly, 622 F.3d at 264. "[T]here is a distinction between a delegation of policymaking authority and a simple delegation of discretionary decision making."[5] Parker v. Sch. Dist. of Philadelphia, 346 F. Supp. 3d 738, 748 n.4 (E.D. Pa. 2018).

---

[5] For example, under Pennsylvania law the School Board, not the principal, "is the final policymaker for the School District in this arena." Flood v. Sherk, 400 F. Supp. 3d 295, 312 (W.D. Pa. 2019). Under Delaware law, although the town's building inspector and Mayor can issue stop work orders, neither possessed "final" policymaking authority because their actions were appealable to the town's Board of Adjustment. Carr v. Town of Dewey, 730 F. Supp. 591, 609 (D. Del. 1990). Under New Jersey law, a town manager was not a final policymaker where the actions in question "were subject to review by a number of

Plaintiff argues that the NHA was a final policymaker because she was responsible for the operation of Pocopson, the subordinate responsible for training staff reported to her, and she reviewed state Department of Health ("DOH") survey reports, taking responsive action as needed. See Pl.'s Pet. ¶¶ 7-11, ECF No. 35; Second Am. Compl. ¶¶ 25 ("The Defendant, including the NHA and DON, exercised complete and total control over the healthcare of all the residents of the Pocopson Home. . . ."); 26 ("The NHA . . . testified that she was responsible for the operation of Pocopson Home."), ECF No. 35-5. The allegations in Plaintiff's proposed Second Amended Complaint do not allow the Court to draw a reasonable inference that the NHA had final policymaking authority. Instead, the allegations support the conclusion that the NHA administered the nursing home in the role of a traditional manager and did not have final policymaking authority.

Similarly, although the DON was a professional employee of the county government, Plaintiff points to insufficient facts to support the allegation that the DON had final policymaking authority. Plaintiff argues that the DON is a final policymaker because she was ultimately responsible for the operation of the

---

higher authorities including the Council, the Mayor, the NJPERC or the State Department of Personnel." Brennan v. Norton, 350 F.3d 399, 428 (3d Cir. 2003).

11

clinical team at Pocopson Home, she would be made aware of any DOH deficiencies, and she would rely on those DOH deficiencies to track and trend issues of resident care. See Pl.'s Pet. ¶¶ 13-15; Second Am. Compl. ¶¶ 27, 28. Here, again, the allegations do not support the claim that the DON had final policymaking authority.

Based on these averments in the proposed Second Amended Complaint, the Court cannot draw the reasonable inference that the NHA and DON are final policymakers under § 1983. Here, like in Brennan v. Norton, the NHA and DON are not final policymakers where their authority is likely "subject to review by a number of higher authorities." 350 F.3d at 428 (reversing district court's assigning final policymaking power to a town manager).

## V.  CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Leave to File a Second Amended Complaint will be denied.

An appropriate order follows.