IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BARBARA TAMMARO, AS ADMINISTRATRIX OF THE ESTATE OF JULIANNE MARIE KEHLER, DECEASED,<br>           *Plaintiff*,<br><br>v.<br><br>COUNTY OF CHESTER, POCOPSON HOME,<br>           *Defendant.* | :<br>:<br>:<br>:<br>:<br>:<br>: CIVIL NO. 21-3811<br>:<br>:<br>:<br>:<br>: |

## MEMORANDUM

**Scott, J.**                                                                                                             **June 10, 2024**

This is a wrongful death and survival action brought by Plaintiff Barbara Tammaro ("Plaintiff"), as administratrix of the Estate of Julianne Marie Kehler ("Decedent"), against Defendant County of Chester, Pocopson Home ("Defendant" or "Pocopson Home") under 42 U.S.C. § 1983 alleging violations of the Federal Nursing Home Reform Amendments ("FNHRA"). Presently before the Court is Defendant's Motion for Summary Judgment. ECF No. 53. For the reasons set forth below, Defendant's Motion for Summary Judgment (ECF No. 53) will be granted. An appropriate Order will follow.

## I.    BACKGROUND[1]

Pocopson Home, which is owned and operated by the County of Chester, Pennsylvania, is a skilled nursing facility that offers long-term nursing services to its residents. ECF No. 53 at 4 ¶ 2; ECF No. 57 at 5 ¶ 2. From January 18, 2018 through February 4, 2020, Decedent was a resident

---

[1]     The facts set forth in this Section are derived from the undisputed evidence of record submitted by the parties and the disputed evidence of record viewed in the light most favorable to Plaintiff.

1

at Pocopson Home, with multiple intermittent hospitalizations. ECF No. 53 at 4 ¶ 4; ECF No. 57 at 5 ¶ 4. At the time of her admission in 2018, Decedent's diagnosis was, *inter alia*, "unspecified dementia without behavioral disturbance," "dysphagia, oral phase," and a brain tumor (which the family declined to treat). ECF No. 53 at 5 ¶¶ 6–7; ECF No. 57 at 5 ¶¶ 6–7.

With respect to her dysphagia, Decedent received treatment from a speech therapist, who stated that Decedent "needed supervision specifically while eating due to her dementia-related dysphagia present on her admission." ECF No. 53 at 7 ¶ 18; ECF No. 57 at 7 ¶ 18. Additionally, Decedent's physician's order dated July 31, 2018, stated "allow soft snacks, sandwiches, desserts." ECF No. 53 at 7 ¶ 20; ECF No. 57 at 7 ¶ 20. Accordingly, during her residency at Pocopson Home, Decedent was maintained on a soft diet with occasional reversions to a pureed/liquid diet when, for example, she returned from a hospitalization for a fractured femur. ECF No. 53 at 7 ¶ 21; ECF No. 57 at 7 ¶ 21. Thus, her nutrition care plans provided for "soft snacks, soft sandwich, and soft dessert." ECF No. 53 at 8 ¶ 21; ECF No. 57 at 7 ¶ 21. Her care plan further provided for "[s]et up assist with meal tray as needed – monitor intakes." ECF No. 53-21, Ex. 17 at 5.

On February 4, 2020, Decedent died. ECF No. 53 at 6 ¶ 10; ECF No. 57 at 6 ¶ 10. She was "found unresponsive in a chair in the TV lounge by a nursing aide." ECF No. 53 at 6 ¶ 10; ECF No. 57 at 6 ¶ 10. At the time of her death, Decedent had been eating an egg salad sandwich. ECF No. 53 at 6 ¶ 11; ECF No. 57 at 6 ¶ 11. Her Certificate of Death indicated "the immediate cause of death was asphyxia due to probable aspiration of food particles." ECF No. 53 at 6 ¶ 12; ECF No. 57 at 6 ¶ 12. No medical autopsy was performed to confirm Decedent's cause of death. ECF No. 53 at 7 ¶ 16; ECF No. 57 at 7 ¶ 16.

The Pennsylvania Department of Health ("DOH") conducts both annual surveys of the operation of nursing homes and complaint surveys relating to specific alleged deficiencies

concerning an individual resident's care. ECF No. 53 at 9 ¶ 29; ECF No. 57 at 9 ¶ 29. For example, years prior to Decedent's admission, in July 2015, the DOH cited Pocopson Home for failure to revise, review, and update a comprehensive care plan—a citation with a scope and severity rating of "E," meaning it was widespread throughout the facility. ECF No. 60, Ex. C. at 21. During the period Decedent resided at Pocopson Home, Pocopson Home received numerous deficiencies. *Id.* Specifically, on June 7, 2018, Defendant was cited for failing to ensure each resident receives adequate supervision to prevent accidents when a "resident choked on her shirt." *Id.* at 22. And on July 18, 2019, Defendant was cited for failing to ensure that a nursing home area is free from accident hazards and provides adequate supervision to prevent accidents when a resident ingested derma soap. *Id.* at 23. Following Decedent's death, the DOH conducted a complaint survey investigating Decedent's death and "concerns in the area of quality of care/resident safety," and determined the complaint was "unsubstantiated." ECF No. 53 at 10–11 ¶ 32; *see also* ECF No. 53-19.

II.  **PROCEDURAL HISTORY**

On August 26, 2021, Plaintiff filed her initial Complaint, which asserted both state negligence claims and claims under 42 U.S.C. § 1983. ECF No. 1. After Defendant moved to dismiss, the Court dismissed the state law claims with prejudice and the § 1983 claims without prejudice. ECF No. 13. On December 23, 2021, Plaintiff filed her Amended Complaint, which alleged wrongful death and survival claims under § 1983 and identified the Chester County Commissioners as the relevant policymakers. ECF No. 14. On January 6, 2022, Defendant once again moved to dismiss. ECF No. 15. Following briefing and oral argument, on February 16, 2022, the Court granted the Motion to Dismiss in part and denied it in part. ECF No. 23. Specifically, the Court dismissed Plaintiff's § 1983 claims that were based on a theory of intentional

understaffing of Defendant's facility but permitted Plaintiff to pursue her § 1983 claims that were based on a failure-to-train theory. *Id.*

On November 29, 2022, Plaintiff filed a Petition for Leave to Amend the Amended Complaint, seeking to identify two of Defendant's managerial employees, its Nursing Home Administrator (the "NHA") and its Director of Nursing (the "DON"), as final policymakers. ECF No. 35. On March 31, 2023, the Court denied Plaintiff's Petition for Leave to Amend the Amended Complaint. ECF No. 47.

On May 25, 2023, Defendant filed the present Motion for Summary Judgment (ECF No. 53), to which Plaintiff filed a Response in Opposition. ECF No. 57. On July 11, 2023, this case was reassigned from the Honorable Eduardo C. Robreno to this jurist. ECF No. 55.

### III. **LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Judgment will be entered against a party who fails to sufficiently establish any element essential to that party's case and who bears the ultimate burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The initial burden of demonstrating that there are no genuine issues of material fact falls on the moving party. Fed. R. Civ. P. 56(a). Once the moving party has met its burden, the nonmoving party must counter with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). "A dispute about a material fact is 'genuine' only 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 151 (3d Cir. 2017) (citation omitted). The nonmovant must show more than the "mere existence of a scintilla of evidence" for elements on which she bears the burden of production. *Anderson v.*

4

*Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "'[O]nly evidence sufficient to convince a reasonable factfinder' merits consideration at this stage." *Fowler v. AT & T, Inc.*, 19 F.4th 292, 299 (3d Cir. 2021) (quoting *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014)). Bare assertions, conclusory allegations or suspicions are not sufficient to defeat summary judgment. *Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

In considering the Motion, the Court draws all reasonable inferences in the nonmovant's favor. *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 204 (3d Cir. 2022). Disagreements over what inferences may be drawn from the facts, even undisputed ones, preclude summary judgment. *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 744 (3d Cir. 1996) (citation omitted). Credibility determinations, the drawing of legitimate inferences from facts, and the weighing of evidence are matters left to the jury. *Anderson*, 477 U.S. at 255.

**IV. DISCUSSION**

As indicated above, Plaintiff brings this suit pursuant to 42 U.S.C. § 1983 alleging violations of the Federal Nursing Home Reform Amendments ("FNHRA"). The basis of Plaintiff's claim is that Pocopson Home failed to provide Decedent with the "care and treatment necessary to prevent her from suffering aspiration, asphyxia, and death." ECF No. 57 at 3. In moving for summary judgment, Defendant argues Plaintiff has no evidence that the Chester County Commissioners, as "final policymakers," were on notice of or deliberately indifferent to a policy

or custom of not training its employees to comply with resident care plans.[2] *See* ECF No. 53-1 at 18–20. For the reasons that follow, this Court agrees with Defendant.

Section 1983 serves as "a vehicle for imposing liability against anyone who, under color of state law, deprives a person of rights, privileges, or immunities secured by the Constitution and laws." *Grammar v. John J. Kane Reg'l Centers-Glen Hazel*, 570 F.3d 520, 525 (3d Cir. 2009) (internal quotations and citations omitted). To prevail on a § 1983 claim, a plaintiff must show, first, a deprivation of a right secured by the Constitution or laws of the United States, and second, that the alleged deprivation was committed by a person acting under color of state law. *Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (citation omitted). As to the first element, the Third Circuit has held that provisions of the FNHRA "confer individual rights that are presumptively enforceable through § 1983." *Grammar*, 570 F.3d at 532. And as to the second element, because Pocopson Home is owned and operated by the County of Chester, Defendant's actions in connection with Decedent's care were under the color of state law.

However, because Defendant in this matter is a municipal entity, the Court must determine whether the alleged violations of federally protected rights under the FNHRA are attributable to Defendant itself. "[A] municipality cannot be held liable *solely* because it employs a tortfeasor— or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Rather, a municipality may only be held liable under § 1983 if the violation of the plaintiff's rights was caused by action taken pursuant to a municipal policy or custom. *Monell*, 436 U.S. at 690–95; *see also Robinson v. Fair Acres Geriatric Ctr.*, 722 F. App'x 194, 197–98 (3d Cir. 2018).

---

[2] Defendant also argues it is entitled to summary judgment because Plaintiff has no evidence that Decedent's injuries were caused by Defendant's policy of not training or supervising nursing staff to follow care plans. *See* ECF No. 53 at 20–22. The Court declines to address this argument.

"There are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003). Only one is applicable here: "the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need." *Id.* (internal quotations and citation omitted). Here, Plaintiff argues that Defendant was deliberately indifferent by failing to train and supervise its staff to maintain and follow resident care plans.

To succeed on a failure-to-train claim, a plaintiff must show "that in light of the duties assigned to . . . employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [municipality] can reasonably be said to have been deliberately indifferent to the need." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989). "This requires a showing of the policymakers' 'continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees.'" *Robinson*, 722 F. App'x at 199 (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 407 (1997)). Deliberate indifference "may stem from a failure to act despite notice [that municipal] employees continually violate citizens' rights." *Wright v. City of Philadelphia*, 685 F. App'x 142, 147 (3d Cir. 2017). "As it relates to nursing home facilities, the Third Circuit Court of Appeals has held that deficiency citations from regulators may serve as evidence of a failure to train." *Alexander v. Fair Acres Geriatric Ctr.*, 678 F. Supp. 3d 639, 647 (E.D. Pa. 2023) (citation omitted). Additionally, "for liability to attach in this circumstance the

7

identified deficiency in a [municipality's] training program must be closely related to the ultimate injury." *Canton*, 489 U.S. at 391.

Defendant argues that Plaintiff has no evidence that the Chester County Commissioners deliberately acquiesced in a custom of failing to train and supervise staff to follow care plans. *See* ECF No. 53 at 18–19. In response to this argument, Plaintiff reasserts arguments which she made in support of her Motion for Leave to File a Second Amended Complaint. Specifically, Plaintiff argues that the Pocopson Home Nursing Home Administrator ("NHA") and its Director of Nursing ("DON") had final policymaking authority at Pocopson Home, and that the NHA and the DON were on notice of the unconstitutional practices at Pocopson Home. *See* ECF No. 57 at 15–20. However, it is well established that a brief in opposition to a motion for summary judgment is not an appropriate avenue to amend one's complaint nor is it the appropriate avenue to ask the Court to reconsider a previous ruling. *See, e.g.*, *Nykiel v. Borough of Sharpsburg*, 778 F. Supp. 2d 573, 587 (W.D. Pa. 2011) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment."). The Honorable Eduardo C. Robreno denied Plaintiff's Motion for Leave to File a Second Amended Complaint finding that the allegations in the proposed Second Amended Complaint did not allow the Court to draw a reasonable inference that the NHA or the DON had final policymaking authority because the NHA and DON's authority was likely subject to review by a number of higher authorities. *See* ECF No. 46. Given that ruling, this Court cannot, at this juncture, entertain Plaintiff's arguments that the NHA and the DON had final policymaking authority.

Accordingly, the issue is whether there is a dispute of material fact over whether the Chester County Commissioners, as the policymakers, were on notice of the alleged unconstitutional practices at Pocopson Home and then consciously decided to acquiesce in those

practices. The theory posited in the Amended Complaint is that policymakers were aware of DOH surveys that made the unconstitutional practice so obvious that a jury might reasonably infer that the policymakers acquiesced to the failure to maintain care plans. This theory is foreclosed by the record.

Plaintiff deposed only one of the three Chester County Commissioners: Michelle Kichline. Commissioner Kichline testified that the Commissioners did not involve themselves in the day-to-day management of Pocopson Home because the nursing home consistently passed licensure. ECF No. 63 ("Kichline Dep.") at 33:8–34:22. Commissioner Kichline further testified that if serious problems with the management of the nursing home arose, those issues would be brought to their attention. *Id.* at 32:12–33:4. Moreover, when asked whether the NHA "has the final and unreviewable say as to what clinical policies and procedures are utilized at Pocopson Home," Commissioner Kichline answered, "our department heads are hired for their expertise, and, you know, we have – the only things I've ever heard from Pocopson Home is the awards they've gotten, the – the fact that they've – consistently are passing all state and federal reviews. So that's really all we ever hear about." *Id.* at 26:1–17.

Testimony from other fact witnesses, along with Plaintiff's own expert testimony, reinforces that the Chester County Commissioners were not on notice of any unconstitutional practice. *See, e.g.*, ECF No. 57 at 15–19 (Plaintiff describing various individuals' testimony). Instead, the testimony focuses on alleged failures by the NHA and the DON without referencing the County Commissioners' knowledge at all. For example, Plaintiff's medical expert, Eileen Fingerman, M.D., assigned ultimate responsibility for the practices that allegedly caused Decedent's injury to the NHA and the DON. *See, e.g.,* ECF No. 60 at 12 ("This is a failure on behalf of the policy makers Ms. Zimmerman as the DON, and Ms. McKenna, NHA."); *see also*

*id.* at 21 ("Policy makers, the DON and NHA, were aware of these deficiencies, but were deliberately indifferent to the ongoing failure to correct these issues with resident care[.]"). While assigning responsibility to the NHA and the DON, Dr. Fingerman makes no reference to the Chester County Commissioners. With no such testimony by any witness that the County Commissioners knew or should have known of the alleged unconstitutional practice, there can be no finding of municipal liability.

Therefore, even viewing the facts in the light most favorable to Plaintiff, there is no evidence to support the conclusion that the Chester County Commissioners were deliberately indifferent to an alleged unconstitutional practice of which they were on notice. Accordingly, Plaintiff's *Monell* claim fails and this Court must enter judgment in favor of Defendant.

## V. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment will be granted. An appropriate Order will follow.

BY THE COURT:

*/s/ Kai N. Scott*

HON. KAI N. SCOTT
United States District Court Judge